## Economy Light & Power Co. v. Anthony J. Sheridan, Adm'r.

103    145
a200s 439

1. DAMAGES—*In Personal Injury Cases.*—The question of damages in personal injury cases is largely a matter for the reasonable discretion of a jury.

**Action on the Case,** for personal injuries. Appeal from the Circuit Court of Will County; the Hon. JOHN SMALL, Judge presiding. Heard in this court at the April term, 1902. Affirmed. Opinion filed July 18, 1902.

GARNSEY & KNOX, attorneys for appellant.

DONAHOE & McNAUGHTON, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action brought by appellee, as administrator of the estate of Martin Sheridan, deceased, to recover damages for the death of his intestate, alleged to have been caused by the negligence of appellant. There were numerous counts in the declaration, charging the negligence of appellant in various forms, to which there was filed a plea of the general issue. At the conclusion of the evidence offered on behalf of appellee, appellant asked the court to exclude the evidence and direct the jury to find a verdict in favor of the defendant. This the court refused to do. Appellant introduced no evidence on its behalf and its counsel declined to make any argument to the jury.

The court instructed the jury as to the form of their verdict, no other instructions being asked for or given on either side. The jury returned a verdict in favor of appellee in the sum of $3,000, for which amount, a motion for new trial having been overruled, judgment was given.

Appellant seeks to reverse the judgment for three reasons: First, because certain material allegations of the declaration, to wit, that decedent came in contact with the wires and that at the point of contact the wires of appellant were imperfectly insulated or completely uninsulated, were not supported by any proof. Second, because the court erred in overruling appellant's objection to a hypothetical question, propounded to an expert witness, which assumed the existence of proof of the averments of the declaration above mentioned. Third, because the damages are excessive.

At the time of his death deceased was employed by the Chicago Telephone Company as a lineman. He was a single man, thirty-five years of age, earning $40 a month, in addition to his board and expenses. The telephone company had a line of poles along the tow path of the Illinois and Michigan canal from Chicago, through and beyond Joliet.

An arrangement had been made between the telephone company and appellant, by which the latter was permitted to string certain of its wires upon the poles of the telephone company, in order to furnish light to a firm of contractors working for the Chicago Sanitary District upon its drainage canal. As work on the drainage canal progressed, it became necessary to make certain changes in the line of poles belonging to the telephone company. In the course of the work necessitated by the change, deceased ascended a pole of the telephone company to make fast a suspension wire to be used to support a cable over the channel of the drainage canal. While standing on a cross-arm to which appellant's wires were attached, with one foot on each side of the pole, Sheridan suddenly uttered an exclamation of apparent pain and fell to the ground. He struck on his head and shoulders and was instantly killed. One of the electric light wires was on the pin near the end of the cross-arm and the other on a pin some six or eight inches from the pole. There was no glass insulator on the pin next to the pole. The wires were charged with an electric current of some 1100 volts pressure. The witness Fillion testified that after Sheridan's body was removed he went up the pole and examined the electric light wire next to the pole and found it pretty much bare on each side of the arm, and that it was bare in a good many places. Witness Sampson also testified that he examined the electric light wire after Sheridan's death, at the place where Sheridan stood, and that it was in a poor condition and the wire was bare. Shortly before he ascended the pole, Sheridan had walked across the drainage channel, which had some water in it, making his shoes damp. He was handling a wire of the telephone company which extended across the channel. The witness McNally testified that just before he fell Sheridan uttered a wild scream; that he looked wild and his eyes turned up in his head. We are of opinion that all the facts in proof warranted the jury in finding that the wire of appellant, at the place where he stood, was bare, or defectively insulated, and that deceased came in contact with it

and received therefrom a shock of electricity which caused him to fall from the pole.

The objection which appellant makes to the hypothetical question is, that there is no proof that the decedent made contact with the wire, or that the wire at the cross-arm was bare and the insulation worn off. As there was, however, proof in the record, as above shown, tending to establish these averments of the declaration assumed by the hypothetical question, the latter was not subject to the objection now urged against it.

The proof shows that deceased left surviving him a mother, two brothers and three sisters, some of whom are married and others unmarried. His mother lived in Iowa, and he at times lived with her. A witness swore that she had seen him give money to his mother; that she had read letters from him to his mother, and that the letters sometimes inclosed money and sometimes money orders to his mother. The proof clearly made out a case for more than nominal damages. In City of Chicago v. Keefe, Adm'r, 114 Ill. 222, where the suit was brought for the benefit of the next of kin, who were, in that case, the father, mother, four brothers and four sisters, the court says, in reference to the question of damages :

"The question is in its nature incapable of exact determination, and the jury should therefore calculate the damages in reference to a reasonable expectation of benefit, as of right, or otherwise, from the continuance of the life. Parents, and even brothers and sisters, might reasonably expect in many ways to derive pecuniary benefit from the continued life of the intestate, as of grace and favor, if not of right, at any age of life, and our statute imposes the duty of support, in the event of their becoming paupers, of the parent by the child, and of one brother or sister by another brother or sister."

In O. & M. Ry. Co. v. Wangelin, Adm'r, 152 Ill. 138, in which the next of kin was a sister, it is said :

"It is not required that the evidence shall afford data from which the extent of the pecuniary loss can be ascertained with a reasonable degree of certainty. The statute says that ' the jury may give such damages as they shall

deem a fair and just compensation.' In Chicago & Alton Railroad Co. v. Shannon, 43 Ill. 338, this court said : ' How this pecuniary damage is to be measured—in other words, what is to be the amount of the verdict—must be largely left (within the limits of the statute) to the discretion of the jury. The legislature has used language which seems to recognize this difficulty of exact measurement, and commits the question especially to the finding of the jury.' And similar language has been used in numerous subsequent cases."

From the above authorities it appears the question of damages in cases such as this is largely a matter for the reasonable discretion of a jury. As Sheridan sometimes lived with his mother and from time to time furnished her pecuniary aid, we do not feel disposed to reverse the judgment on account of excessive damages. The judgment of the court below will therefore be affirmed.