## J. W. Nordhaus, Administrator, Appellee, v. Vandalia Railroad Company, Appellant.

1. APPEALS AND ERRORS—*when overruling demurrer waived.* If a party does not stand by his demurrer but pleads over to the declaration, he thereby waives the right to assign error upon the action of the court in overruling such demurrer.

2. APPEALS AND ERRORS—*what not subject to review.* The action of the trial court in improperly refusing peremptorily to instruct for a defendant upon the first trial of a cause is not subject to review upon a second appeal from a judgment rendered upon a second trial of such cause if the trial court repaired its error upon the first trial by awarding a new trial.

3. APPEALS AND ERRORS—*when assignment of error deemed waived.* Assignments of error not argued are deemed waived.

4. PLEADING—*when sufficiency of declaration cannot be urged.* In an action for the death of a servant caused by the alleged wrongful act of his master, the absence of an averment that such death was not caused by the negligence of a fellow-servant cannot be taken advantage of on appeal where no motion in arrest was made.

5. MASTER AND SERVANT—*what duties non-delegable.* It is the duty of a master to use reasonable care to provide a reasonably safe place for his employes to work and to inform immature, ignorant or unskilled servants of the dangers of their situation, if there are any; and these are duties which cannot be delegated by the master.

6. COSTS—*abide final determination of cause.* The costs of a mistrial, under the practice in this state, abide the final disposition of the controversy.

7. VERDICTS—*power of court to sustain as to one defendant and set aside as to another.* In an action *ex delicto* charging joint negligence, after a verdict finding joint liability, the plaintiff may dismiss his suit as to one defendant and take judgment against the other.

8. DAMAGES—*what competent to show pecuniary loss.* In an action for death caused by alleged wrongful act, where the relation between the intestate and next of kin is that of son and mother, it is competent to show the purchase and the sending of money orders by the former to the latter.

9. DAMAGES—*when pecuniary loss presumed.* In an action for death caused by alleged wrongful act where the relation existing between the intestate and next of kin is that of son and mother, the law presumes a pecuniary loss.

**Action in case for death caused by alleged wrongful act.** Appeal

from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1908. Affirmed. Opinion filed March 4, 1909.

S. W. FORDYCE, JR., and L. D. TURNER, for appellant.

McHALE & SUMMER and D. J. SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellee, as administrator, to recover damages for the benefit of the next of kin of Frank Zehak, whose death was occasioned through the alleged negligence of appellant. The suit was originally brought against appellant and the St. Louis National Stock Yards. Both defendants filed a plea of general issue to the amended declaration and a verdict was returned against both. A motion for a new trial was entered by defendants and granted by the court. Upon a second trial a verdict was again returned in favor of the plaintiff, against both defendants. A motion for a new trial having been entered by both defendants, appellee dismissed his suit as to the St. Louis National Stock Yards and judgment was entered against appellee in favor of the Stock Yards, for all costs made by the Stock Yards or made by appellee in making it a party, and execution awarded for the same. The court then overruled appellant's motion for a new trial and entered judgment against it for $1,500. There was no motion by appellant in arrest of judgment.

The proofs in the case show that Frank Zehak's death occurred under the following circumstances: The St. Louis National Stock Yards have large yards at East St. Louis, equipped with stock pens and also with railroad tracks and switch engines. About four or five blocks east of the stock yards appellant had switch yards called the "Willow Yards" and leading

to and in said yards the stock yards had a track called the stock yards connection track over which it delivered cars of stock to several railroads. The delivery of stock by the stock yards over this track usually took place about 2:30 o'clock each afternoon. On the afternoon of October 23, 1907, Zehak was one of ten foreigners working as a section gang for appellant under a foreman named Brunkhurst, who were engaged in distributing cinders along the stock yards connection track. In doing this work the train crew had for convenience, backed out on said track with two cars of cinders and five refrigerator cars, all coupled together. The track ran east and west and the refrigerator cars were on the west end of the string of cars. The cinder cars were about four feet high and had a door on the bottom to let the cinders through. At the time of the injury Zehak and other members of the section gang, were shoveling cinders through the bottom of one of the cars. The refrigerator cars west of them and some box cars stored on the track just north of the connection track, made it impossible for the laborers in the cinder cars to see a train approaching from the stock yards. It was then past the usual time for the cars to be delivered for distribution from the stock yards and the conductor had sent a flagman down the track west of the refrigerator cars to flag the stock yards train, but he went only from three to five car lengths west of the refrigerator cars to a point where he could see the cars coming from the stock yards. Soon afterwards the stock yards delivery of the day which consisted of forty-five loaded cars, pushed by an engine at the west end of the string, came towards the flagman. This train was running fast and for some reason the flagman did not see it until the same was within ten or twelve car lengths from him. He immediately gave a slow or steady signal and shortly afterwards a stop signal, which was repeated to the crew of the incoming train by the switchman on the car at the east end of the

train. The stock yards train could not, or at any rate did not, stop in time to prevent a collision but struck the cars standing on the connection track a heavy blow moving them forward a distance of some three car lengths and causing Zehak to be thrown through the hole onto the track below, where he was run over by the cars and killed.

The evidence taken at the first trial was preserved by the bill of exceptions in this case, for the purpose, as stated by counsel for appellant, of assigning as error, the action of the court at the first trial in refusing to instruct the jury to find a verdict for the Vandalia Railroad Company, appellant here, on the testimony then produced. That company however made and caused to be argued a motion for a new trial at the close of the first trial, which was granted by the court. If the court below in fact erred at the first trial in refusing to instruct the jury to find a verdict on the evidence, for appellant, all it could do by way of remedy, was to award appellant a new trial. This relief was granted and the case then stood, so far as previous errors were concerned, as though it had never been tried.

Appellant further insists that its demurrer to the second amended declaration, which was overruled by the court, should have been sustained. Appellant, however, did not stand by its demurrer but pleaded over to the declaration and it is a well-recognized rule of law that where a party does not abide by his demurrer, but pleads over, he waives the right to assign error upon the action of the court in overruling it. Phoenix Ins. Co. v. Belt Ry. Co., 182 Ill. 33; Jacobs v. Marks, 183 *id.* 533; Geary v. Bangs, 138 *id.* 77.

Counsel for appellant say the omission to allege in the second amended declaration that the death was not caused by the negligence of a fellow-servant, was fatal and can be taken advantage of at any time. As we have already seen, appellant has debarred itself

by pleading over from taking advantage of any defect in the declaration which might be raised by demurrer. This question might however have been raised by motion in arrest of judgment, but no such motion was made and the sufficiency of the declaration therefore cannot be here questioned.

Appellant claims that appellee should not be permitted to recover for the reason, if the death of Zehak was caused by negligence, it was the negligence of fellow-servants, for which appellant was not liable. As we view the evidence, Zehak's death was caused by the negligence of the train crew in charge of the cars where he and his fellow laborers were engaged in shoveling the cinders. It is the duty of a master to use reasonable care to provide a reasonably safe place for his employes to work and to inform immature, ignorant or unskilled servants of the dangers of their situation, if any there are. These are duties which the master cannot delegate to others and if he attempts to perform them through another, that other stands in the relation of a vice-principal and the master is responsible whether the vice-principal is a foreman, a common laborer or whatever his position may be. Baier v. Selke, 211 Ill. 512; Libby, McNeill & Libby v. Scherman, 146 Ill. 540; Himrod Coal Co. v. Clark, 197 Ill. 514.

Upon the general facts in the case involving the questions whether appellant was guilty of negligence in causing Zehak's death, and whether he was at the time in the exercise of ordinary care for his own safety, the proofs show conclusively, that Zehak was working in the line of the business for which he was employed under circumstances where he could not see the approaching train or anticipate the imminence of danger; that he on his part was guilty of no negligence contributing to the injury; and that the train crew in charge of the cars where he and his fellow laborers were at work, were guilty of inexcusable neglect in permitting the collision to occur as it did.

Appellant made a motion in the court below to tax the costs of the retrial against appellee for the reason that the new trial was granted at appellee's request, on account of faulty instructions. The record however only shows, that appellant, after the first verdict, made the motion for a new trial, which was argued by its counsel and not argued by counsel for appellee and that the motion was thereupon granted. It is the general rule of practice in this state that the cost in the first trial shall abide the final result of the suit, but even if this were not the rule, the record in this case does not sustain plaintiff's claim.

It is again insisted, that as the verdict in this case was a joint one, the judgment should also be joint and that the court below had no right to set aside the joint verdict as to one party and enforce it as to the other. In the late case of Postal Telegraph Cable Co. v. Likes, 225 Ill. 249, it was held by our Supreme Court under a declaration in an action *ex delicto* charging joint negligence and after a verdict finding joint liability, the plaintiff might dismiss his suit as to one defendant and take judgment against the other; that the action of the plaintiff in moving for judgment against the one defendant and the action of the court in entering judgment against that one, amounted to a dismissal of the case against the other and if there was any irregularity in the proceedings, it was one of which the party against whom judgment was entered could not complain.

In I. C. R. R. Co. v. Foulks, 191 Ill. 57, it was held, that there was no error in granting a new trial to two defendants and permitting suit to be dismissed as to them and entering judgment against a third defendant alone, when a verdict was against all three defendants; and in Davis v. Taylor, 41 Ill. 405, approved in Postal Telegraph-Cable Co. v. Likes, *supra,* it is said, ''Taking a judgment against a portion of the defendants amounts to a dismissal of the

case as to the residue and in actions *ex delicto* this may be done."

Under the well-recognized rule stated in the above cases, the court below committed no error in permitting appellee to dismiss the suit as to the St. Louis Stock Yards Company and entering judgment against appellant.

Appellant complains that the court erred in permitting evidence of the purchase by Zehak of postoffice money orders to be sent to Theresa Zehak in Hungary to be introduced, on the ground this did not tend to prove that Theresa Zehak was his mother or the money sent was contributed to her support. It appeared however from the evidence of two of Zehak's brothers that their mother, a widow, was living in Hungary and that Frank had sent her money a number of times. The evidence as to the purchase of money orders was therefore competent to be considered in connection with the evidence of the two brothers. It is also to be considered that where the relation of parent and child exists, the law presumes a pecuniary loss from the death of the child. Chicago v. Keefe, 114 Ill. 222; Economy L. & P. Co. v. Sheridan, 103 Ill. App. 145; McKechney v. Redmond, 94 Ill. App. 470.

Further complaint is made by appellant in its brief, that the court refused one of its instructions and improperly gave another for its co-defendant the National Stock Yards. The questions are not discussed however in appellant's argument and upon examination of the instructions referred to we find that the court did not err in its ruling in reference to the same.

The judgment of the court below in this case will be affirmed.

*Affirmed.*