HORR, Administratrix, Respondent, vs. C. W. HOWARD COM-
PANY, Appellant.

*October 25—November 14, 1905.*

(1) *Trial: Province of judge: Summarizing evidence in charge to
jury.   (2–5) Master and servant: Defective appliances causing
death: Evidence: Special verdict: Instructions to jury: Dam-
ages: Arguments of counsel.*

1. It is within the province of the trial judge, in his charge, to
summarize and recall to the jury the evidence offered on each
side of disputed issues; and where he attempts in good faith to
do this with impartiality and fairness, warning the jury that
his statements are not to control them, but that they must de-
cide according to their own memory of all the evidence, his
omissions or misstatements will not constitute error unless his
attention is promptly called thereto by counsel.

2. In an action for death of an employee in a pulp mill caused by
the breaking of a steam blowpipe, the evidence is *held* to sus-
tain findings in a special verdict that the blowpipe was de-
fective and unfit, to the knowledge of defendant's superintend-
ent, and that such defect was the proximate cause of the injury.

3. Refusal to submit in the special verdict a separate question as
to which part of the blowpipe broke first was not error, the
place of breakage being a mere evidentiary fact.

4. The court charged the jury that if, in answer to the first question,
they found the breaking of the blowpipe was a mere accident,
they need go no further, but afterwards instructed them that,
in any event, they must answer the last question, as to the
amount of the damages. The jury found that the breaking was
not mere accident. *Held*, that the inconsistency in the charge
was not prejudicial error.

5. In an action for damages by reason of a husband's death, plaint-
iff's counsel in his argument asked the jury to consider the in-
terests of the widow and children.  Upon objection the court
said: "The jury will take their instructions as to questions of
damages from the court," and afterwards charged the jury to
allow only for such pecuniary injuries as were suffered by the
widow alone.  *Held*, that there was no error.

APPEAL from a judgment of the circuit court for Winne-
bago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Action by widow, as administratrix, to recover her damages resulting from death of her husband, Austin Horr, by reason of negligence of defendant, leaving her two infants dependent on her own labor.   Deceased, twenty-one years old, was at work in February, 1904, in attendance upon defendant's three digesters in its sulphite mill.   The digester is an iron or steel tank, six and one-half feet in diameter by thirty-four feet high, its base being upon the ground floor and its top extending about eighteen inches above the floor of the third story.   The tank having been filled with water, acid, and ground wood, steam is turned on under a pressure of approximately eighty-five pounds to the square inch, and so continues until the wood pulp, by action of heat and acid, is "cooked." Thereupon the incoming steam is shut off by a valve operated by a shaft which extended into the third story.   That function pertained to the deceased.   Thereupon, by similar valve operated by a shaft extending into the second story, the blowpipe, extending from the bottom of the tank to a large wooden tank, is opened and, by the pressure of steam within the tank, the contents are driven through this blowpipe into the blowpit or tank, whence it is removed as needed for drying and rolling into paper.   The blow-off pipe upon the digester in question started from near its bottom, the first section of about three feet in length comprising the valve before spoken of, then a section of pipe, bent somewhat upward, eight feet six inches in length, and then a third section, three or four feet long, bending again toward the horizontal and passing through a ten-inch timber wall and extending into the blowpit about twelve inches.   The sections of pipe were joined together by bolted flanges.   Such pipe was cast iron, about ten inches exterior diameter and eight inches interior when new, so that the walls were about one inch thick.   The weight of the three sections of pipe is not given, but the middle eight-foot section weighed about 800 pounds and, inferably, the whole about 1,500 pounds, supported at one end by bolting to the

flange of the digester, and on the other end merely by the passage of the third section, called the "nozzle," through the wall of the blowpit.

Each digester was blown off from two to four times per day. The rush of the woody pulp under high pressure, and accompanied by acid-bearing fluid, had a wearing effect upon the blow-off pipe, so that the life of such pipes was approximately a year. There was evidence tending to prove that about four weeks before the accident the second section of this blow-off pipe had been replaced by a new one, and that at the same time the nozzle, or third section, was found to be worn quite thin, especially at the point on its upper circumference where it had a bend toward the horizontal. A witness declared that in places it was no more than a quarter of an inch in thickness, while a witness for the defendant testified that at no point was it less than five eighths of an inch thick. There was also evidence tending to prove that for some two weeks before the accident there had been an unusually violent vibration or jar about this pipe, such, indeed, as to shake the whole building, and that upon the morning before the accident extraordinary escape of steam and of the pulp was observed, and that all of these things—the thinness of the nozzle, the extreme agitation of the apparatus. and the leaky condition of the pipe—were called to the attention of the superintendent of the mill.

In the forenoon of February 25, 1904, deceased was notified by the operator of an intention to blow off, and, according to his duty and custom, went to the valve shaft in the third floor and turned off the incoming steam and thereupon went to a north window open at the top. Thereupon another employee, whose duty it was, went to the valve shaft in the second floor and opened it for the blow off, whereupon an explosion took place, described by one of the witnesses as very violent. Almost momentarily hot steam rushed from the first to the third floor, scalding deceased so that he died a couple

of days afterwards. After the accident the blowpipe was found broken in two places, namely, in the nozzle piece, near the point where it passed through the wall of the blowpit, approximately at the bend in that pipe above referred to; also in the second section, about a foot from where it was flanged onto the valve piece. Evidence was offered of the extent of pressure to which the blow-off pipe was subjected whenever the pulp was blown through it, of the likelihood of its breaking from excessive vibration, and also from thinness of its walls. Defendant's superintendent testified to standing within five feet, and to seeing the break occur in the second section, and that none occurred in the nozzle until it had pulled out of the hole in the blowpit wall and fallen over against the iron supports of the digester.

The jury found by a special verdict (1) that the breaking was not a mere accident; (2) that the blowpipe was defective and unfit for the purpose; (3) that such defect was the proximate cause of the injury to the decedent; (4) that defendant's superintendent knew of such defect in time to have prevented the accident; (5) that he ought, in the exercise of ordinary care, to have so known; (6) that no negligence of deceased contributed to the injury; and (7) damages $2,500. The defendant moved for a nonsuit and direction of a verdict for itself, and, after verdict, moved to reverse the answers to questions 1, 2, 4, 5, and 6, and to order judgment for the defendant; also, if that be refused, that the verdict be set aside and a new trial granted by reason of various errors and for want of evidence to support the verdict. All of these motions were denied, and exceptions duly reserved, whereupon judgment was entered for the plaintiff, from which the defendant appeals.

For the appellant there was a brief by *Hoyt, Doe, Umbreit & Olwell,* and oral argument by *Joseph B. Doe.*

For the respondent there was a brief by *A. M. Spencer,* and oral argument by *M. H. Eaton.*

DODGE, J.   The assignments of error, sixteen in number, may, to much extent, be grouped for purposes of discussion.

1. There are those which deny sufficiency of the evidence to support the material answers to the special verdict on the subject of the existence and knowledge of defects and their efficacy in causing the injury.   After careful examination we are convinced that there was at least some evidence tending to show a defective and leaky condition resulting from, and evinced by, the violent jarring or vibration of the digester and blowpipe and the escape of steam and pulp.   There was also evidence of dangerous thinness of the nozzle section of the blowpipe; also, that all these were called to the actual knowledge of the superintendent.   His denials and explanations on these subjects but serve to present a conflict of evidence for the jury.   While there is no denial by any eye-witness of the superintendent's testimony that the explosion or break occurred in the new section of the pipe and not in the nozzle section, his narrative was clouded with such improbability by the undisputed evidence as to the violence of the explosion and instantaneous envelopment of the premises in steam that the jury might, within reason, have deemed it incredible, coming as it did from a witness whose interest was obvious and whose veracity was perhaps impeached by the direct contradiction of his statements on other subjects by several witnesses.   No error was committed in the several rulings sustaining the sufficiency of the evidence to support the verdict.

2. Another group of errors present the fact that the trial court, in charging the jury upon several of the questions submitted, attempted to summarize, and suggest the tendency of, the evidence upon both sides.   Counsel claims that such practice is erroneous, and that, in so doing, important items of evidence favorable to defendant were omitted, although, with two or three exceptions, he leaves it to us to find out, as best we can, what such items were.   In England it was recognized not only as a legitimate province, but a duty, of the trial

judge to sum up the evidence, and even to declare his opinion upon the weight and effect thereof, with the explanation that his opinion should not control the jury. One or both of these practices have been forbidden by statute or constitution in some states, but not in Wisconsin, where they seem to have been formerly approved, except in criminal trials. *Fowler v. Colton,* 1 Pin. 331; *Ketchum v. Ebert,* 33 Wis. 611. Undoubtedly the tendency in later years has been averse to any expression of opinion upon the evidence by the trial court, but we need give no consideration to that subject, for nothing of the sort is presented by the record. Throughout the history of our state, trial judges have been in the habit of recalling the evidence to the jury in defining the issues. In no case where this has been fairly done has it been held error, though we have often sustained refusals to call attention to specific items of evidence at request of a party, and pointed out the danger that the fairest attempt to recite evidence would invoke criticism from one party or the other. In two cases where the trial court evidently attempted in good faith to state the evidence, but did so incorrectly, it was held not reversible error, unless appellant called attention promptly to the omission or misstatement. *Braunsdorf v. Fellner,* 76 Wis. 1, 45 N. W. 97; *Muetze v. Tuteur,* 77 Wis. 236, 245, 46 N. W. 123. In two other cases the comment on evidence was held error on the ground that it was in effect a partisan argument, so declaring the opinion of the judge without even explaining to the jury their liberty to disregard it that it amounted to a direction to decide a controverted issue of fact in a certain way. *Dingman v. State,* 48 Wis. 485, 4 N. W. 668; *Conway v. Mitchell,* 97 Wis. 290, 72 N. W. 752. There can be no doubt that, after a protracted trial, a fair summarization of the character of the evidence offered on each side of a disputed issue may greatly aid the jury and promote the probability of intelligent consideration and decision by them. When a trial judge has both the industry and the courage to under-

take to so promote the cause of justice, we are far from suggesting criticism or disapproval. The attempt is nevertheless accompanied with danger. A summary of evidence implies omission of some. The judge and the advocate are almost sure to differ as to the relative importance or cogency of different items. What the former omits as relatively unimportant the latter may consider the cornerstone of his position, and it may so appear to an appellate tribunal. This, while suggesting great care to trial judges in any such attempt, also justifies the holding that the variant views of the counsel as to the importance of omitted evidence must be promptly notified to the judge, so that he may at least consider it or supply the omission if inadvertent.

We have with much care canvassed the court's summary upon each question in comparison with the evidence, and are convinced of its entire impartiality and fairness in intent, and mainly in accomplishment. In each instance we find the defendant's side stated with quite as much amplification and force as that of plaintiff—usually with more. Of course, items of evidence are omitted, but quite as much so against plaintiff as defendant. The court reiterated to the jury that he would attempt only a statement of salient points in the testimony, and that such statements were not to control them, but that they must decide according to their own memory of all the evidence. · If at any point relatively important details of evidence in defendant's favor were omitted, such omission was clearly inadvertent, and appellant must be deemed to have waived it by silence when he ought to have called it to the attention of the trial court. *Muetze v. Tuteur, supra.* We cannot find in these instructions, so far as exceptions were reserved, any error justifying reversal.

3. Error is assigned upon a refusal to inquire of the jury, by a separate question, which part of the blowpipe broke first. This, like many other details, was included in the questions submitted as to existence of defects and efficient causation of

the injury by those defects. The place of breakage was a merely evidentiary fact, and an answer either way to the requested question would have been inconclusive as to the ultimate question of liability. The fact had not been dignified by allegation and denial in the pleadings. The request called for mere cross-examination of the jury, and was properly refused.

4. Error is assigned because, upon objection to a remark by plaintiff's counsel in his argument, asking the jury to consider the interests of the widow and children of deceased, the court merely said:

"The jury will take their instructions as to questions of damages from the court. When the court gets to it, they will be instructed then as to what damages they will consider."

It was proper that the jury should consider the fact of the existence and age of children and the increased burden of their support cast on plaintiff by her husband's death. *Abbot v. McCadden,* 81 Wis. 563, 51 N. W. 1079. The jury might properly consider the right and consequent "interest" of these children to such support as relevant to the measure of duty cast upon the plaintiff, though, of course, no pecuniary injury to the children could be recovered. The remarks of counsel were clearly capable of this proper and legitimate meaning. When the court promptly cautioned the jury to observe his instructions as to measure of damages, and then charged them to allow only for such pecuniary injuries as were suffered by the widow alone, we can discover no error in his conduct, nor probability of misleading the jury.

5. Further error is assigned because the trial court, in charging as to the first question of the special verdict, whether the break of the blowpipe was mere accident, told the jury, if they answered "Yes," they need go no further—that alone would constitute their verdict. But, when he reached the last question as to damages, he instructed them: "This question you must answer in any event, because you are not supposed

to know whether your verdict is for the plaintiff or for the defendant." While, of course, there was inconsistency between the directions to omit all further consideration if the first question were answered affirmatively and the instruction to answer the last question in any event, it is entirely inconceivable that any prejudice could have resulted. The verdict returned removed the applicability of the first of these directions; but, even if the condition arose to make it apply, what possible harm could have resulted whether they obeyed or disobeyed the direction to answer the seventh question? Clearly none.

Other assignments of error are so obviously without foundation that we do not feel justified in devoting either time or space to their statement or discussion. We find no prejudicial error in the record.

*By the Court.*—Judgment affirmed.