HACKETT, Administrator, Respondent, vs. WISCONSIN CEN-
TRAL RAILWAY COMPANY, Appellant.

*January 12—February 1, 1910.*

*Railroads: Death of employee: Negligence of co-employee: Assumption*
*of risk: Line of duty: Contributory negligence: Rules: Duties of*
*firemen: Defects in track: Evidence: Special verdict: Instruc-*
*tions to jury: Damages: Mortality and annuity tables.*

1. Under our statutes a railway employee in the line of his duty
   does not assume the risk of negligence in a co-employee except
   perhaps in a case where he knowingly, voluntarily, and unnec-
   essarily submits himself thereto.
2. A railway fireman riding in an engine as his duty required did
   not cease to be acting in the line of his duty, within the mean-
   ing of our statutes, merely because he performed some negli-
   gent act in the course of his conduct.
3. From the facts that after an engineer and fireman were in their
   places the engineer increased the speed of the engine to an ex-
   cessive and dangerous degree, and that the fireman did nothing
   except to call the engineer's attention to the speed, it cannot be
   inferred that the fireman co-operated in the negligent act or
   that he consented thereto at a time when he might have with-
   drawn himself from the danger; nor can it from those facts be
   said that the fireman was guilty of negligence, he being subject
   to the command and control of the engineer.
4. The fireman in such case was not required to interfere further
   than he did with the engineer's operation of the engine, by
   *rules addressed to all employees* of the railway company, call-
   ing attention to their general duty to be careful and to avoid
   danger and to the duty of one employed with another to caution
   such other of risks which he is about to encounter.
5. Such general rules must be deemed controlled, so far as they con-
   flict, by special rules addressed to the firemen, which provided
   specifically that while on duty the firemen are subject to the
   directions of their own engineers.
6. Where the death of a fireman was alleged to have been caused by
   the negligence of an engineer in running his engine at an ex-
   cessive speed, resulting in its derailment, evidence as to the
   generally weak and defective condition of the track in places in
   close proximity to the point of derailment, and that heavy en-
   gines had recently been run over the road, tending to increase
   such defects, was admissible on the question of the engineer's
   negligence.

7. In a question in a special verdict as to discovery of defects in a railway track, the use of the expression "reasonably proper care, test, or inspection" instead of "ordinary care and prudence," or instead of "reasonable and proper care, test, and inspection" (sec. 1816, Stats.: Supp. 1906), was not prejudicial error.

8. Refusal to submit certain questions for special verdict is not error where there is no evidence which would sustain findings thereon favorable to the party requesting such submission.

9. It is not error to refuse to submit in the special verdict a proposed question relating to a matter which is not within the issues but is a mere evidentiary fact bearing upon a subject covered by a question duly submitted.

10. Where the court submitted in the special verdict the question whether "a want of ordinary care" on the part of a person contributed to his injury, it was not error to refuse to submit a proposed question as to whether such person's "own *slight* want of ordinary care" so contributed.

11. It is not the duty of the trial court to select individual items of evidence and embody them in instructions.

12. Upon the question in a special verdict whether want of ordinary care on the part of a person contributed to his injury, the court properly refused a requested instruction that carelessness and negligence on his part, no matter how slight, if it directly caused or contributed to the accident, would necessitate an affirmative answer. The use of the word "directly," instead of "proximately," was incorrect; and the instruction conveyed the erroneous idea that slight negligence constitutes want of ordinary care.

13. Where decedent had contributed to the support of his parents, mortality and annuity tables may be admissible in evidence as an aid in estimating their future damages on account of his death, but the subject is not one for mathematical computation, especially where the parents had no legal right to any contribution.

14. Where an adult unmarried son, employed as a locomotive fireman, had voluntarily contributed an amount not exceeding $150 per year to the support of his parents, the younger of whom was fifty-one years old, and who were not dependent upon and had no legal right to such contribution, an award of $4,500 as damages to the parents for his death is *held* excessive, but option is given to remit therefrom all in excess of $2,500.

MARSHALL, J., dissents.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Plaintiff's decedent, a fireman, was on a work engine of the defendant September 10, 1906, with the engineer and a passenger. The engine and tender were detached from the work train. The work crew and conductor were on the tender. The engineer proceeded to back up westward from Weyauwega to Waupaca. This was done at an increase of speed reaching, as estimated, sixty or seventy miles an hour, until the tender mounted the track, ran to one side and tipped the engine over, killing both the fireman and engineer. The complaint alleged negligence in that the track was defective and the engine was carelessly run by the engineer and conductor in charge thereof. The jury found that (1) the track of the defendant at the place of injury was in a defective and unsafe condition; (2) such defect could have been discovered by defendant by reasonably proper care, test, or inspection; (3) engineer operated the locomotive in a careless and negligent manner; (4) such facts were the proximate cause of the injury and death; (5) deceased was engaged in the line of his duty as employee; (6) the injury arose from a risk or hazard peculiar to the operation of railroads; (7) no want of ordinary care or prudence on the part of the deceased contributed to the injury; (8) deceased contributed to his parents $250 a year; and (9) damages $4,500. After the usual motions for direction and correction of verdict, judgment *non obstante,* and new trial, judgment was entered for the plaintiff for $4,500 and costs, from which the defendant appeals.

For the appellant there were briefs by *Walter D. Corrigan, W. A. Hayes,* and *Clifton Williams,* and oral argument by *Mr. Corrigan.*

For the respondent there was a brief by *Stewart & McDonald,* and oral argument by *F. C. Stewart.*

The following opinion was filed February 1, 1910:

Dodge, J.    1. Appellant's first contention is that verdict and judgment for the defendant should have been ordered

upon undisputed evidence.    This general contention is sup-
ported on various asserted grounds, among which is the doc-
trine of assumption of the risk.    But under the existing stat-
utes in this state a railroad employee, in the line of his duty,
does not assume the risk of negligence in a co-employee, ex-
cept perhaps in the case where he knowingly, voluntarily, and
unnecessarily submits himself thereto.

Again, it is asserted that the deceased was not in the line of
his duty as an employee.    His duty required him to ride in
the engine from Weyauwega to Waupaca, and he was doing
just that.    He did not cease to be acting in the line of his
duty, within the meaning of our statutes, even if he per-
formed some negligent act in the course of his conduct.
*Kunza v. C. & N. W. R. Co.* 140 Wis. 440, 123 N. W. 403.
The evidence, instead of conclusively establishing that he was
not in the line of his duty, we think was conclusive the other
way.

Further, appellant contends that deceased co-operated and
confederated with the engineer in the performance of the lat-
ter's negligent act, which was the running of the train at an
excessive and negligent speed.    We have no doubt that if
there had been affirmative agreement or even consent by the
deceased, in advance, to such running, recovery would be pre-
vented both under the rule *volenti non fit injuria* and on the
ground of contributory negligence.    We, however, find no
evidence justifying more than a conjecture of any such fact.
The sum total of the evidence is that after engineer and fire-
man were in their places the engineer increased the speed of
the engine to an excessive and negligent degree; that deceased
did nothing except to call the engineer's attention to the speed.
From these facts there can be no legitimate inference that he
either agreed with, or encouraged, the engineer to such negli-
gence, or that he consented thereto at a time when a protest
could have been rendered effective by withdrawing himself
from the danger.

A further contention that deceased is conclusively convicted of contributory negligence is met by much the same considerations. If he had no knowledge before taking his seat in the cab that an excessive and negligent rate of speed was intended, he had no opportunity at any time after discovering such intent or conduct to take any effective precautions. He could not leave the engine nor could he control the engineer's conduct, unless perhaps he were of preponderant physical power, a fact which was not established. Besides, he was subject to the command and authority of the engineer, who had larger experience and was vested by the rules of the company with full control over his conduct as an employee. If it was his duty, in the exercise of due care or under the rules, to caution the engineer of a danger so obviously within the latter's knowledge, the evidence at least tends to establish that he did so. The proof is undisputed that both he, and the other occupant of the cab in his presence, called the engineer's attention to the very high rate of speed; had loud talk "how he was hitting her" or "batting her," in the language of the witness. The assertion by counsel that such remarks were made jestingly or by way of encouragement is without support from the testimony; indeed is in defiance of express contradiction.

The remaining basis for this general contention of appellant is that the deceased's conduct was somehow in breach of divers and sundry rules of the company. We are cited to a half dozen rules addressed generally to all employees of the railroad company calling attention to the hazardous nature of their employment and their general duty to be careful both for themselves and for others, and duty of one who is employed over or with another to caution such other of risks which he is about to encounter. As counsel construes these rules, the business of railroading could hardly be carried on with a celerity equal to the ancient stage coach. If they have been promulgated by the company in the literal and extreme sense which they assume in court, the conclusion would be

irresistible that they have been promulgated for the purpose of being broken instead of obeyed in many respects. It is very certain that an employee who obeyed all of them to the letter would not make his services of much value in the business of railroading as it is customarily conducted within common knowledge. However, these glittering generalities in regard to general duty of caution and avoiding of danger in a business where exposure to danger is continuously required of employees must be deemed controlled, so far as they conflict, by the special rules addressed to the firemen, which provide primarily and specifically that "while on duty they are subject to the directions of their own engineers. . . . Each engineer is held responsible for the engine under his charge." "Engineers must not allow others to handle their engines, except their own firemen, the engineer remaining upon the engine and being held responsible." Firemen shall, "when not engaged with other duties, assist in keeping a constant lookout, and will instantly give their engineer notice of any obstruction which they may perceive, or of any signals observed from other trains, or in case they shall have reason to believe their trains have parted, they will immediately notify their engineers of the same." We can find nothing in these rules to justify the view that it was the duty of the fireman to attempt to control, or interfere with, the engineer's operation of his engine; at most, further than to call his attention to that operation, which was done by the deceased. It is difficult to conceive any other act reasonably possible to the fireman which he could fairly believe would be effective. Having called attention to the excessive speed, could he suppose the engineer would be affected by a lecture upon the perils of such speed from himself, an inferior in responsibility, in knowledge, and in experience? Counsel assures us that such perils are known of all men; then surely by an experienced engineer, once he is informed of the fact of the high speed. The only other course open to the fireman was to take in his own hands

the running of the engine in defiance of express rules, and possible only in case he could physically overpower his superior. Such steps 'are manifestly so unreasonable and absurd that they cannot be declared as matter of law essential to the conduct of an ordinarily prudent person under the circumstances disclosed. We cannot agree with counsel that the evidence is at all conclusive of any failure on the part of the deceased to exercise ordinary care.

2. Error is assigned upon the admission of evidence as to the generally weak and defective condition of the track at places in close proximity to that of derailment but not identical therewith. Doubtless it is true that existence of a specific defect in the track causing the injury is not legitimately proved by establishing defects elsewhere. But in this case was presented the question of the engineer's negligence in running the train; that negligence was dependent upon all the surrounding facts and circumstances, among which would unquestionably be the condition of the track. The defects were all of a generally existing character, such as inferiority of ties, their insecurity in the ground, and loosened condition of the spikes, the last two of which at least were shown to result progressively from the operation of trains over the track. We think, therefore, the evidence was clearly admissible for some purpose and no error was committed in receiving it. Its effect might have been restrained by instructions to the jury had defendant so desired and requested. The same considerations apply to the admitted evidence of the recent running over the road of large engines; the excessive effect of such engines in producing or increasing the defects in the track above mentioned being made apparent.

3. Criticism is made of the phraseology of two or three questions in the special verdict: first, as to the use of the expression "reasonably proper care, test, or inspection," instead of "ordinary care and prudence," in discovering the defects in the track by the defendant. We think these expressions are

so nearly equivalent, especially in the light of *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 311, 80 N. W. 644, that we certainly cannot say that the use of one instead of the other has so obviously affected the substantial rights of the appellant as to justify reversal in the face of ch. 192, Laws of 1909 (sec. 3072*m,* Stats.). Indeed the statute in 1906 (sec. 1816, Stats.: Supp. 1906) predicated liability upon a test still more closely equivalent to the verdict. The other criticisms of the verdict are disposed of by what has been said elsewhere.

4. Errors are assigned upon the refusal to submit by verdict certain questions requested by appellant. The first of these was whether deceased did "co-operate with said engineer in the operation of said engine in a careless and negligent manner." As we have said, we do not find any evidence from which, by legitimate inference, an affirmative answer to this question could have been reached. The second is: Did the deceased "approve of and acquiesce in the operation of said engine in a careless and negligent manner?" So far as this question is to be construed as referring to affirmative agreement or declared approval in advance, it must be controlled by the reasons just expressed as to the preceding one. So far as it relates to a mental state of tacit submission or acquiescence, it is not within any of the issues raised by the pleadings, but relates to a mere evidentiary fact bearing upon the negligence of deceased, a subject covered by a question duly submitted. Therefore its refusal was without error. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 313, 80 N. W. 644; *Blankavag v. Badger B. & L. Co.* 136 Wis. 380, 386, 117 N. W. 852. Another question was requested submitting to the jury whether deceased's "own slight want of ordinary care" contributed to produce the injury. The question in fact submitted was whether "a want of ordinary care" so contributed. Of course the question submitted included that requested. A slight want of ordinary care is a want of ordinary care. Under the

broad discretion of the trial court over the form of the questions in the special verdict, we cannot hold that the adoption of one phrase in preference to the other is an error. *Mauch v. Hartford,* 112 Wis. 40, 42, 54, 58, 87 N. W. 816. Another question, whether the danger was open and obvious to a person in the fireman's situation, was properly refused because wholly immaterial. There was nothing in the situation suggestive even of the idea that any escape for him was possible after the danger arose. This is but a repetition of the contention in favor of the application of the doctrine of assumption of the risk, which we have already treated.

5. Defendant requested many instructions and now assigns error upon the refusal of some of them. Several are for direction of answers to certain questions and are within the preceding discussion. With reference to contributory negligence, an instruction was requested that an affirmative answer be given if deceased unnecessarily and voluntarily exposed himself to a known danger. Refusal of this was proper for the reason, already stated, that there was no evidence that deceased had any means of escape after the danger was known, so that his exposure could not be either voluntary or unnecessary. Another instruction that certain acts of the deceased, some of which were in dispute, would necessitate an affirmative answer was properly refused: first, because it is not the duty of a trial court to select individual detail items of evidence and embody them in instructions (*Sullivan v. Mauston M. Co.* 123 Wis. 360, 363, 101 N. W. 679; *Horr v. C. W. Howard Co.* 126 Wis. 160, 164, 105 N. W. 668); and secondly, because various of the acts therein referred to might or might not have been conclusive of negligence on decedent's part according to other circumstances and facts. Further, on the subject of contributory negligence an instruction was requested that "carelessness and negligence of deceased, no matter how slight," if it directly caused, or contributed to, the accident, would necessitate an affirmative

answer. The refusal of the request was proper, because the instruction was erroneous. It referred to negligence "directly" causing, or contributing to, the accident, instead of proximately, which in itself is incorrect. *Mauch v. Hartford,* 112 Wis. 40, 42, 87 N. W. 816. Further than this, however, it conveyed the idea that slight negligence constitutes want of ordinary care—a proposition early negatived in this court. Want of ordinary care is negligence. Want of extraordinary care, or that care which is customarily exercised by extraordinarily careful people, is slight negligence. The latter has never been recognized as affecting the rights of parties in this state. *Dreher v. Fitchburg,* 22 Wis. 675; 7 Words & Phrases, 6531.

6. Such of the errors assigned upon the portions of the charge in fact given as are sufficiently argued by appellant to entitle them to attention relate mostly to views of the evidence inconsistent with those entertained by appellant. What we have said as to the evidence on the various subjects discussed will indicate that in the main we approve the court's rather than the counsel's view of the effect of the evidence introduced, and we may dismiss such assignments without further comment. We do not think any of them, except that as to damages, could have had any misleading effect on the jury or have affected the substantial rights of the defendant.

Error is also assigned upon the instruction given with reference to the damages, and refusal of a requested instruction substantially to the effect that the recovery should be by mathematical computation of the present value of an annuity to the amount of the deceased's annual contributions during the probable life of the longest liver of the two parents. It was said in *Rudiger v. C., St. P., M. & O. R. Co.* 101 Wis. 292, 77 N. W. 169, that such computation marked the limit of the pecuniary injury in case of death of a husband by negligence, as contradistinguished from a multiplication of the annual contribution by the number of years' expectancy of life of the

beneficiary.  In *Crouse v. C. & N. W. R. Co.* 102 Wis. 196,
208, 78 N. W. 446, 778, which of course should control the
earlier case, it was said that mortality tables and annuity
tables might be admissible in evidence as an aid in estimating
future damages, but that the subject was not one for mathe-
matical computation.  Especially is that true where there is
no legal right to any specific amount, nor, indeed, to any con-
tribution at all.  The court instructed generally in accord
with *Crouse v. C. & N. W. R. Co.*, and we do not think any
prejudicial error occurred in refusing defendant's request
which cannot be fully rectified by requiring a remission of
damages.

7. Upon the question of damages, we are convinced that
the jury exceeded any amount of pecuniary injury to the par-
ents which might result from the death of their adult son.
It is found that his contribution had averaged $250 a year.
But it also appears without dispute that during all the time of
such contributions he had received from his parents support
as an inmate of their family; during most of the time com-
plete support; and during the two years of his railroad service
he had retained a room in their house and a home with them
and had received his board when not actually out on the road,
so it is obvious that his voluntary pecuniary contributions,
over and above that which he had purchased by them, could
not have exceeded $150 a year.  An annuity to the mother,
the younger of the two parents, who was fifty-one years old,
would have been worth, according to the statutory method of
computing the value of life estates (ch. 38, Laws of 1909:
sec. 3871a, Stats.), approximately ten years' purchase, so
that even an annuity of either $150 or $250, payable abso-
lutely and without contingency, could not have been worth
nearly the sum of $4,500.  The annuity tables are predi-
cated, however, only upon the contingency of life, but this
contribution of an adult son to his parents was clouded by
many other contingencies.  He was under no legal liability

to make any, for the parents are shown not to have been indigent, but in easy circumstances for their apparent station in life.    The father, in the prime of health, is shown to have been working regularly and earning $1.50 per day and to own a suitable homestead unincumbered.    Any contribution by the son was dependent upon his persistency in habits of industry and of filial devotion as also upon his continued health and ability to contribute.    The last might well be impaired in case of his marriage and establishment of a home of his own, a contingency of which the annuity tables or the law can furnish no rule for computation.    Thus it is apparent that the present value of the contributions he had been willing to make in the past was by no means equal to the present value of a well secured annuity for the same period.    In view of these considerations the court are of opinion that, while the verdict is excessive and therefore erroneous, the plaintiff should be allowed an option to remit therefrom all in excess of $2,500 and take judgment for that.    The writer is of the opinion that the amount of such optional judgment should be much less under the rule of *Heimlich v. Tabor,* 123 Wis. 565, 102 N. W. 10.

*By the Court.*—Judgment reversed, and cause remanded for new trial: with option, however, to plaintiff, at any time within thirty days after notice of filing *remittitur* in the circuit court, to elect to enter judgment for $2,500 damages, with costs: no costs to be allowed in this court for printing case.

The following opinion was filed February 19, 1910:

MARSHALL, J. (*dissenting*).    The evidence convinces me that deceased and the engineer were agreed upon the manner of operating the locomotive.    True, the latter was the superior.    True, if the former had protested he would have been powerless in the matter.    But likewise true, if deceased

approved of the venture and aided the engineer in a spirit of co-operation instead of mere subordination, the negligence was that of both and it would be a wrong to make the employer repair the loss to surviving relatives which they jointly inflicted. To my mind the evidence shows, conclusively, that the two employees concurred in the negligent act. The danger was just as apparent to one as to the other. The deceased manifested no fear and no disapproval. On the contrary, he entered into the spirit of the thing, showing the most complete mental as well as physical co-operation.

The infirmity in this case is not in that the fireman failed to do something to deter the engineer from pursuing his obviously reckless course, but in that the evidence clearly shows he was perfectly agreeable to what was done, and, therefore, appellant should not be required to pay his personal representative on account of his negligence.