F. W. M'COULLOUGH, Administrator, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO., Appellant.

**Employers' liability:** FEDERAL ACT: CONSTRUCTION: MEASURE OF
1. DAMAGES. The Federal Employers' Liability Act of April 22, 1908, creating a cause of action against an interstate carrier for the negligent death of an employee, differs from our state statute on the subject in that the cause of action is not made to survive to the administrator for the benefit of the estate, but is solely for the benefit of specified classes of beneficiaries, namely; first, the surviving spouse and children; second, the parents, and third, the next of kin; and if there be no representative of either of said classes then there is no cause of action.

The measure of damages in favor of the first class differs from that in favor of either of the other two classes, and that in favor of the second class may differ from that in favor of the third.

**Same:** DAMAGES: PRESUMPTION: PLEADING: EVIDENCE. It is gener-
2 ally held under the state statutes, similar to the Federal Employers' Act, that substantial damages will be presumed in favor of a widow and children without special averment or proof other than a showing of pecuniary loss to the family of decedent, and that as to the other classes of beneficiaries it is necessary to plead and prove their pecuniary loss.

**Same:** ELEMENTS OF COMPENSATION. In an action under this statute
3 for the benefit of the parents the question of whether decedent was a minor or adult is material, and if a minor whether his services would have been of pecuniary value to the parents, and if an adult the prospective gifts or services which the parents might reasonably have been expected to receive from decedent in the course of their

lives. It is only pecuniary loss that can be recovered under this act; compensation for suffering or bereavement cannot be had.

**Same.** It is the general rule that the loss to parents of an adult child is measured by the present worth of such gifts as they would reasonably be expected to have received from him during their lives. And this question of prospective gifts involves a showing of those general facts which are necessarily within the general knowledge of the beneficiaries, and which bear upon the financial resources of the parents and of the decedent; such as the means and earning capacity of each, the extent of contributions to the parents, and dependency of the parents upon decedent, as recognized by him in the form of contributions.

**Same:** PLEADINGS: EVIDENCE: VERDICT. In an action under the federal statute for the benefit of parents for the death of an adult son, it is necessary to plead and prove that the action was brought in behalf of the parents and that they had sustained pecuniary loss. In the instant case the only evidence of pecuniary loss to the parents was a loss of contributions by way of board and room rent paid by the son for two or more years, but with no showing of the amount paid. *Held*, that there was not a sufficient showing of pecuniary loss to support a verdict for $5,000.

**Same:** ELEMENTS OF COMPENSATION. In actions of this character the jury cannot base its finding of loss solely on the earning capacity of decedent, nor upon the damage accruing to his estate; but a fair estimate of the loss to the parents can usually be made by considering the calling of deceased, his income, age, health and habits of industry, as well as the amount of his contributions in money or services.

**Same:** RECOVERY OF PROSPECTIVE GIFTS. It is not only necessary to a recovery by parents for the loss of prospective gifts through the death of an adult son that a showing be made of past assistance, by way of money, services or other material benefits, but as a foundation therefor it must also be made to appear that such assistance would have continued had he lived.

**Same:** JURISDICTION. The Federal Employers' Liability Act as originally enacted impliedly conferred concurrent jurisdiction upon the state courts for its enforcement within their respective states; and by a subsequent amendment such concurrent jurisdiction has been expressly recognized.

**Railways:** NEGLIGENCE: EVIDENCE. Evidence that a railway engine was old and out of repair; that its wheels were badly worn; that its

bushings and bearings were worn, and the engine rattled and pounded while it worked, was sufficient to require submission of the general charge of negligence that the engine was in such a worn and dilapidated condition as to produce an unusual strain upon the side bar, thus causing it to break.

**Same:** EVIDENCE: INSTRUCTIONS. Where the plaintiff alleged that the wheels of a railway engine were flat, and the evidence showed that the wheels and rims were badly worn and had not been trimmed for some time, an instruction assuming that the wheels were flattened was not erroneous.

**Same:** NEGLIGENCE: STATEMENT OF ISSUES. Where there was evidence tending to show defendants failure to repair the engine, as in this case, after inspection and discovery of its condition, rather than a failure to make an inspection, a statement of the issues which included as a ground of negligence the failure to inspect was not prejudicial error; since if the engine was in a dilapidated condition as the evidence tended to show the duty to inspect and the duty to repair after inspection were practically identical.

*Appeal from Hardin District Court.*—HON. CHARLES E. ALBROOK, Judge.

SATURDAY, JUNE 7, 1913.

THIS is an action for damages brought under the provisions of the Employer's Liability Act enacted by Congress. The action was brought by the administrator in behalf of the parents of the deceased. There was a verdict for the plaintiff, and the defendant has appeal.—*Reversed* and *Remanded.*

*J. L. Parrish* and *Robt. J. Bannister,* and *Lundy & Wood,* for appellant.

*Bryson & Bryson* and *Wade, Dutcher & Davis,* for appellee.

EVANS, J.—The decedent was an unmarried adult twenty-five years of age. He left surviving him a father and mother fifty-three and fifty-four years of age, respectively. He was

an employee of the defendant company, and as such was engaged at the time of the accident resulting in his death in interstate commerce. He was the forward brakeman on his train, and was at his proper place upon the engine while the train was running between stations, when a side bar of the drive wheel was suddenly broken. The revolving piece tore the cab of the engine where the decedent was sitting, and inflicted injury upon him from which he shortly died. There was a verdict for the plaintiff for $5,000. It is urged by the appellant that there was no basis either in the pleading or in the evidence for the allowance of substantial damages under said Liability Act. The question presented is a very important one in its effect upon future cases under this statute, and we therefore give it our first attention.

The Liability Act referred to creates a right of action against the employer for the death of any employee, resulting from the employer's negligence, in favor of the administrator but for the benefit of certain classes of relatives as follows: ''(1) For the benefit of the surviving widow or husband or children of such employee; (2) and if none then of such employee's parents; (3) and if none then of the net kin dependent upon such employee.'' The beneficiaries of this suit are those of the second class above stated. It is urged by the appellant that the petition made no averment that the beneficiaries named suffered any pecuniary loss by reason of their son's death. And it is urged, further, that there was no evidence of any such pecuniary loss or of any facts from which such pecuniary loss could be found. Inasmuch as this act impliedly provides that suit may be brought thereunder in state courts as well as federal courts, it is important that there be uniformity of judicial opinion in construing its provisions. Manifestly, the final word will rest with the Supreme Court of the United States as to matters of substantive right thereunder. As to pleading and procedure, necessarily the courts of each state must pursue their own statutory methods.

The parties before us differ in their analysis of the act

in question. The plaintiff contends that in its general application it is not materially different from the Iowa statute on the same subject. This contention is not tenable. This act is modeled in its principal features upon an English statute known as Lord Campbell's Act, enacted in 1846, and which, with some amendment, has been in force in England ever since. This act does not provide for a survival of the cause of action arising to the decedent in his lifetime because of the injury which resulted in his death. It creates a new cause of action, not in favor of the estate of the deceased, but in favor of certain specified classes of beneficiaries. The cause of action is based, not upon the injury to the deceased, but upon the fact of his death by wrongful act of the defendant. The extent of damage in each case is to be measured by the pecuniary loss sustained by the particular beneficiaries rather than by the loss to the estate of the decedent as such. Similar statutes have been enacted in thirty-five or forty states of the Union, and have been in force in some of them for many years. Iowa, however, is not one of such states. Our statute is a survival statute. That is to say, the cause of action which arose to the deceased in his lifetime because of the injury is made to survive after his death to his administrator. The extent of damage is measured by the loss to his estate as such, although exemption of the proceeds for the benefit of the family is provided. The measure of damage is not controlled or varied by the identity or circumstance of the particular person or persons to whom the benefit inures. It will be noted that the federal act under consideration provides for three classes of beneficiaries in the alternative; preference being given in the order named. The existence of the first class excludes the others: the existence of the second class excludes the third. If there be no representative of any of the three classes, then there is no cause of action.

Manifestly, also, the measure of damage in favor of the first class will be essentially different from that in favor of

1. Employers'
   Liability:
   federal act:
   construction:
   measure of
   damages.

the second and third classes, and that in favor of the second class may be different from that in favor of the third.

In those states, where similar statutes have been in force, it has been quite uniformly held that substantial damages will be presumed in favor of the widow and children without special averment or proof other than a showing of the pecuniary value of the life of the decedent to his family; and doubtless to his own estate, on the theory that a prospective inheritance of such estate by the family would ordinarily be a reasonable expectation. It has also been quite usually held that as to other classes of beneficiaries it is necessary to aver and prove their pecuniary loss by appropriate allegation and evidence. If the action be brought on behalf of the parents, it is not enough to show their mere survival. Pecuniary loss must be shown. From the nature of the case the evidence must often be circumstantial only and perhaps indefinite, but the aim of the statute to that end is definite and persistent.

2. SAME: damages: presumption: pleadings: evidence.

Where recovery is claimed for the benefit of parents for the death of a child, it is material to show whether the decedent was a *minor* or *adult*. If a minor, the question whether his services during the remaining years of his minority would have been pecuniarily valuable to his parents may be inquired into as affecting the measure of damage. If the decedent was adult, then this question is eliminated. There remains, however, the somewhat narrow ground of "prospective gifts" either of money, property, or services which the parents could reasonably have expected to receive in the course of their lives from the decedent. Under this act, pecuniary loss only can be considered. Compensation cannot be had for suffering or bereavement. It has been held that a presumption of *nominal* damages will obtain in favor of the parents. *Atchison R. R. Co., v. Weber,* 33 Kan. 543 (6 Pac. 877, 52 Am. Rep. 543), and cases cited therein. But there is no presumption in favor

3. SAME: elements of compensation.

of substantial pecuniary loss to parents or dependent rela-
tives, except such inference or presumption as may naturally
arise out of evidence tending to show such loss.

Apparent exceptions to this rule are found in New York
and Illinois. But the decisions in those states are based upon
the particular form of their statutes. Each statute provides
that the jury may give "such damages as they shall deem
a fair and just compensation." Under each statute, also,
the beneficiaries are confined to surviving husband or wife
and next of kin, and the damages recovered are distributed
in accordance with the statutes of descent.

Generally speaking, in all other jurisdictions the measure
of such loss is held to be the present worth of such gifts as
the parents could reasonably have expected· to receive from
their adult child in the course of their lives.

4. SAME.    The trial court instructed in substance to
this effect. The difficulty with this record is not in the in-
structions nor in the rulings of the court on the admission
of evidence, but in the final state of the evidence, and per-
haps in the state of the plaintiff's pleadings. In our fore-
going analysis of the Liability Act in question, reference
is had to the original act of April 22, 1908, alone. The amend-
ment of April 5, 1910, is excluded from consideration, be-
cause the alleged cause of action involved herein accrued prior
to its adoption.

This question of loss of prospective gifts to the parents
will ordinarily involve an inquiry into the means and earning
capacity of the decedent on the one hand, and the means and
earning capacity of the parents on the other. The extent of
previous contributions for support would clearly be a proper
consideration. It is not legally necessary to show that the
parents were dependent upon the deceased child as in cases
of "dependent next of kin." But such fact would undoubted-
ly be admissible in behalf of the parents if it were shown
that such dependence was recognized by the deceased in the
form of contributions. In the nature of the case, evidence

cannot be very definite as to the actual amount of the pecuniary loss sustained in such a case, but it does devolve upon the plaintiff to show those general facts which are necessarily within the general knowledge of the beneficiaries and which bear upon the financial resources and prospects of themselves, as well as those of the decedent.

Turning to the petition in the case before us, there was an averment that the decedent left surviving him his father and mother. There was no direct averment that such survivors had sustained any pecuniary loss by his death nor any direct averment that the action was brought in their behalf. Taking the petition as a whole, however, the fair inference perhaps ought to be indulged that such was the apparent intention of the pleader. We would be slow to reverse on this ground, especially in view of the fact that the petition was not assailed.

5. SAME: pleadings: evidence: verdict.

Turning to the evidence, the question of the amount of the pecuniary loss sustained by these parents seems to have been either overlooked or left to mere presumption. The surviving father testified as a witness, but did not touch upon this subject at all. The mother, testifying, touched the subject as follows:

Roy was not the oldest in the family. I have a married daughter. I have one other boy. My husband is a common laborer. My son contributed to the family expenses when he was working. Cross-examination: We have been living in Iowa Falls about four years. My husband used to work for the Rock Island Road. He ceased to work for the Rock Island about five years ago. About three years before Roy's death. He was formerly a conductor. I lived in Minnesota while he was conductor. Q. You had been living at Iowa Falls about two years at the time of Roy's death? A. Yes, sir. Q. He had been working for the Rock Island all those two years? A. The boy, I understand you? Q. Yes, the boy Roy? A. Yes, sir. He was working on that division between Estherville and Cedar Rapids and made his home with me and my hus-

band. He boarded and roomed there when he was there and paid me for his board and room. Q. And in that way contributed to the family? A. Yes, sir; and in other ways, too.

This is the entire testimony in the record on that question. It fails to furnish any sufficient data upon which the jury could properly award a verdict of $5,000.

Some fair guide ought to be furnished to the jury for the exercise of their judgment. They should not be permitted to render a finding solely upon the earning capacity of the decedent nor upon the amount of damage accruing to him or his estate; nor should they be required or permitted to make a mere guess without the aid of pertinent facts tending to show the extent of pecuniary loss. The Supreme Court of Minnesota states the rule as follows: "The proper estimate can usually be arrived at with approximate accuracy by taking into account the calling of the deceased, and the income derived therefrom; his health, age, talents, habits of industry; his success in life in the past, as well as the amount of aid in money or services which he was accustomed to furnish the next of kin; and, if the verdict is greatly in excess of the sum thus arrived at, the court will set it aside or cut it down." *Hutchins v. St. Paul Railway Co.*, 44 Minn. 5 (46 N. W. 79). In the foregoing case the contributions of the son were $50 a year to his mother, whose expectancy of life was seven and one-half years. A verdict of $3,500 was reduced to $2,000. In *Little Rock Railway v. Voss* (Ark.), 18 S. W. 172, the decedent earned from $100 to $150 a month, and contributed to the support of his mother and invalid sister from $30 to $50 a month and from $5 to $20 additional when necessary to his sister. A verdict of $6,500 was sustained. In *Fordyce v. McCants*, 51 Ark. 509 (11 S. W. 694, 4 L. R. A. 296, 14 Am. St. Rep. 69), the decedent had been contributing all his wages except $125 a year to his parents, who were poor and dependent. A verdict of $2,391 was sustained. In *O'Callaghan v. Bode*, 84 Cal. 489, (24 Pac. 269),

6. SAME: elements of compensation.

the decedent was twenty-three years old, and had been the sole support of his mother and her minor children, and had contributed to such support $40 to $50 per month.  A verdict of $3,000 was sustained.  Verdicts of $2,000, $1,500, $3,750, $4,200, $3,550, and $2,500 were sustained in the following cases, respectively:  *Chicago Railway Co. v. Shannon,* 43 Ill. 338; *City of Salem v. Harvey,* 129 Ill. 344 (21 N. E. 1076) ; *MacVeigh v. Minneapolis Railway Co.,* 113 Minn. 450 (129 N. W. 852) ; *Smith v. Coon,* 89 Neb. 776 (132 N. W. 535) ; *Texas Ry. v. Lester,* 75 Tex. 56 (12 S. W. 995) ; *Missouri Ry. Co. v. Henry,* 75 Tex. 220 (12 S. W. 828) ; *Leque v. Madison Gas Co.,* 133 Wis. 946 (113 N. W. 946).  The following verdicts were held excessive:  In *Chicago Ry. v. Vester,* 47 Ind. App. 141 (93 N. E. 1039), $4,000; in *McKay v. New England Co.,* 92 Me. 454 (43 Atl. 29), $2,000, reduced to $750; in *Paulmier v. Erie Ry. Co.,* 34 N. J. Law, 151, $3,000; in *Hackett v. Wisconsin Central Ry. Co.,* 141 Wis. 464 (124 N. W. 1018), verdict of $4,500 reduced to $2,000; *Hirschkovitz v. Pennsylvania Ry. Co.* (C. C.), 138 Fed. 438, verdict of $3,500, reduced to $2,500.  The cases on this subject are fully collated by Tiffany in his volume "Death by Wrongful Act" (2d Ed.), under sections 153 to 180.  The following quotation from sections 167 and 168 of this work is a fair résumé of the state of the authorities on the question here considered.  We insert in parentheses in the quotations the marginal citations upon which the text is based:  "The cases in which upon the facts damages are recoverable for the loss of prospective gifts are commonly actions by parents for the death of adult children, although cases also arise in which such damages may be recovered for the benefit of adult children on account of the death of a parent, or for the benefit of brothers and sisters and other collateral relatives.  As has been said, such damages are not confined to cases of these descriptions, but may be recovered, where the facts furnish a proper basis, in addition to damages for loss of services, support, etc., in actions for the benefit of husbands, wives, minor

children, *Pym v. Great Northern Ry Co.*, 2 B. & S. 759 (4
R. & S. 396), and in some jurisdictions at least of parents of
minor children.''

In order to lay a foundation for the recovery of damages
for the loss of prospective gifts, it is usually held necessary,
except in New York, for the plaintiff to show that the deceased
during his life gave assistance to the bene-
7. SAME: recov- ficiaries by way of money, services, or other
ery of prospec-
tive gifts.       material benefits, which in reasonable prob-
ability would have continued but for the death.   Cases cited
in notes to sections 168-170. In Illinois, however, the rule
is established that, where the next of kin sustain a lineal re-
lation to the deceased, the law presumes some substantial
damages from the relationship alone, and it is not essential
to show that they received pecuniary assistance from the
deceased, *Dukeman v. Cleveland, C., C. & St. L. R. Co.*, 237
Ill. 104 (86 N. E. 712) ; *Chicago, P. & St. L. R. Co. v. Wool-
ridge*, 174 Ill. 330 (51 N. E. 701) ; *Cleveland, C., C. & St. L.
R. Co. v. Dukeman*, 130 Ill. App. 105, although it is, of course,
competent to show that such assistance was given, *Prendergast
v. Chicago City Ry. Co.*, 114 Ill. App. 156; *Nordhaus v. Van-
dalia R. Co.*, 147 Ill. App. 274.   Section 168.   Thus in *Dalton
v. South Eastern Ry. Co.* (4 C. B. [N. S.] 296, 4 Jur. [N. S.]
711, 27 L. J. C. P. 227), where it appeared that the plaintiff's
son, who was twenty-seven years old and unmarried, and lived
away from his parents, had in the last seven or eight years
been in the habit of making them occasional presents of pro-
visions and money, amounting to about £20 a year, it was held
that the jury was warranted in inferring that the father had
such a reasonable expectation  of pecuniary benefit from his
son's life as to entitle him to recover damages.   And in *Frank-
lin v. South Eastern Ry. Co.*, 3 Hurl. & N. 211 (4 Jur. [N. S.]
565), it appeared that the father was old and infirm, and that
the son, who was young and earning good wages, assisted him
in some work, for which he was paid 3s. 6d. a week; and,
the jury having found that the father had a reasonable ex-

pectation of benefit from the continuance of the son's life it
was held that that action was maintainable, although the
verdict of £75 was excessive. In *Sykes v. North Eastern Ry.
Co.*, 44 L. J. C. P. 191 (32 L. T. [N. S.] 199, 23 Wkly. R. 473),
on the contrary, where the deceased was a bricklayer and
received from his father the wages of a skilled workman, and
was of great assistance to his father, who was also a brick-
layer and who, owing to the loss of assistance from the de-
ceased, could not take the contracts which he had done during
his son's life, it was held that inasmuch as the benefit which
the father derived accrued, not from the relationship, but
from a contract, and there was no evidence that he paid his
son less than the usual wages, he had suffered no pecuniary
loss from the death. *Demarest v. Little,* 47 N. J. Law, 28.
The distinction taken in English cases has generally been
observed in the United States *(St. Louis, M. & S. E. R. Co. v.
Garner,* 76 Ark. 555 (89 S. W. 550) ; *Hillebrand v. Standard
Biscuit Co.,* 139 Cal. 233 (73 Pac. 163) ; *Colorado Coal & Iron
Co. v. Lamb,* 6 Colo. App. 255 (40 Pac. 251) ; *Louisville, N.
A. & C. Ry. Co. v. Wright,* 134 Ind. 509 (34 N. E. 314) ;
*Diebold v. Sharp,* 19 Ind. App. 474 (49 N. E. 837) ; *Pittsburg
Vitrified Pav. & Brick Co. v. Fisher,* 79 Kan. 576 (100 Pac.
507) ; *McKay v. New England Dredging Co.,* 92 Me. 454 (43
Atl. 29) ; *Greenwood v. King,* 82 Neb. 17 (116 N. W. 1128) ;
*Holmes v. Pennsylvania R. Co.,* 220 Pa. 189 (69 Atl. 597,
123 Am. St. Rep. 685) ; *Texas Portland Cement & Lime Co.
v. Lee,* 36 Tex. Civ. App. 482 (82 S. W. 306) ; *Brush Electric
Light & Power Co. v. Lefevre* [Tex. Civ. App.] 55 S. W. 396;
*Gulf, C. & S. F. R. Co. v. Brown,* 33 Tex. Civ. App. 269 (76 S.
W. 794) ; *St. Louis Southwestern Ry. Co. of Texas v. Huey*
[Tex. Civ. App.] 130 S. W. 1017; *Fritz v. Western Union Tel.
Co.,* 25 Utah, 263 (71 Pac. 209) ; *Southern Pac. Co. v. Laf-
ferty,* 57 Fed. 536 (6 C. C. A. 474) ; that is, the plaintiff must
show that the decedent gave assistance to the parent or that
the parent had reasonable expectation of pecuniary benefit
from the continued-life of the child. The proper measure of

damage is the present worth of the amount which it is reasonably probable the deceased would have contributed to the support of the parent during the latter's expectancy of life, in proportion to the amount he was contributing at the time of his death, not exceeding his expectancy of life, *Richmond v. Chicago & W. M. Ry. Co., supra,* 87 Mich. 374 (49 N. W. 621), though it would seem that the rule is not to be applied with mathematical strictness, and that the jury may properly take into consideration the increasing wants of the parent and the increasing ability of the child to supply them. *International & G. N. R. Co. v. Kindred,* 57 Tex. 491; *Texas & P. Ry. Co. v. Lester,* 75 Tex. 56 (12 S. W. 955). In some cases, indeed, the evidence has been held sufficient to sustain a finding that there was a reasonable expectation of pecuniary benefit, although the evidence fell short of showing that assistance was actually furnished. *Hopper v. Denver & R. G. R. Co.,* 155 Fed. 273 (84 C. C. A. 21); *Sieber v. Great Northern Ry. Co.,* 76 Minn. 269 (79 N. W. 95).

The question here involved has received recent consideration by the federal Circuit Court of Appeal for this circuit in the case of *Garrett v. L. & N. Ry. Co.,* 197 Fed. 715 (117 C. C. A. 109). The following quotation from such opinion will serve to indicate the view of that court on such question:

As to the necessity for amendment, it is to be observed, as set out in the statement, that plaintiff simply sues for the benefit of decedent's parents in the first and second counts, and as administrator in the third count. He does not allege anywhere in the declaration that the parents of the deceased suffered any pecuniary loss or injury through his death. The theory seems to have been that it was necessary to state only the facts sufficient (1) to give the court jurisdiction; (2) to show the employment of the deceased and the negligence resulting in his death; (3) the names of the particular beneficiaries for whose benefit the suit is brought, and also the amount of damages sued for. It may be conceded for present purposes that if a widow and children had survived, and the action were maintained for their benefit, the law

would presume substantial damages, and so dispense with the necessity of specific averment in that behalf. *Dukeman v. C. C. C. & St. L. R. Co.*, 237 Ill. 109 (86 N. E. 712). In some jurisdictions even the relationship or connection of the beneficiaries is not deemed important in this respect. *Pennsylvania Co. v. Coyer, Adm'r*, 163 Ind. 631 (72 N. E. 875) ; *Knife & Shear. Co. v. Hathaway*, 17 O. C. D. 750, 751, and cases there cited. But the decedent in this case was twenty-four years of age and unmarried at the time of his death, and we are convinced that the better practice is, at least as to such beneficiaries as are involved here, to require the nature of the damages claimed to have been suffered in consequence of the death to be averred. This results from the conclusion that the action which accrued to the deceased prior to his death did not survive. We have already pointed out that the third class, the 'next of kin,' provided for in the act, is especially limited to such as were 'dependent upon such employe.' This provision at once furnishes the token for identifying the beneficiaries and prescribes the condition of recovery. Is it to be said that such identification and condition need not be averred? Since it is not uncommon experience that a son past his legal majority, as well as a minor son, may be an expense to his parents, it is more consonant with the reason disclosed by the act in respect of next of kin to hold that averment of pecuniary loss or injury is likewise necessary in regard to parents, although dependence, in the sense in which the term is used in the statute with reference to next of kin, is not essential to a recovery for the benefit of parents.

Other cases in substantial accord with the foregoing are as follows: *Railway v. Duke* (C. C. A.) 192 Fed. 306; *Cain v. Railway Co.* (C. C.) 199 Fed. 211; *Youngquist v. Street Railway Co.*, 102 Minn. 501 (114 N. W. 259) ; *Colorado Co. v. Lamb,* 6 Colo. App. 255 (40 Pac. 251) ; *Gonzáles v. Railway Co.* (Tex. Civ. App.) 107 S. W. 897; *Van Brunt v. Railway Co.*, 78 Mich. 530 (44 N. W. 321) ; *Haug v. Great Northern Ry. Co.*, 8 N. D. 23 (77 N. W. 97, 42 L. R. A. 644, 73 Am. Rep. 727) ; *Chicago, Ill. v. Scholten*, 75 Ill. 468; *Chicago, B. & Q. Ry. Co. v. Van Buskirk*, 58 Neb. 252 (78 N. W. 514) ; *Chicago, B. & Q. Ry. Co. v Bond*, 58 Neb. 385 (78 N. W. 710) ;

*Topping v. Town St. Lawrence,* 86 Wis. 526 (57 N. W. 365) ;
*Winnt v. Railway Co.,* 74 Tex. 32 (11 S. W. 907, 5 L. R. A.
172) ; *Railway v. Ryan,* 62 Kan. 682 (64 Pac. 603) ; *Coal Co.
v. Limb,* 47 Kan. 469 (28 Pac. 181). See, also, Hale on Damages (2d Ed.) sections 140-142.

In the case before us the most that can be said for the
evidence is that it showed the mere fact that contributions
had been made to the parents by the decedent to some amount
in his lifetime. There is not the slightest disclosure as to
the extent of such contributions. Without any disclosure
on that question, how could a jury form any judgment as
to the amount which might have been reasonably expected
in the future? If this evidence could be deemed sufficient to
sustain a verdict for $5,000, then it were better for the plaintiff to omit pertinent testimony than to produce it. It is true
that no hard or fast rule can be laid down for the measurement of damages. When all is shown that can be shown on
behalf of the beneficiaries, much will necessarily be left to
fair inference and estimate. There is no escape from the
conclusion, however, that the verdict in this case was purely
arbitrary as to amount. Resting solely upon the evidence
which we have quoted herein, it was clearly excessive and
the motion for a new trial ought to have been sustained on
that ground.

As an addendum to the foregoing division of the opinion,
we desire to say that since it was written publication has
occurred of the opinions of the United States Supreme Court
in *Mich. Centr. Ry. Co. v. Vreeland,* 227 U. S. 59 (33 Sup.
Ct. 192, 57 L. Ed. ——) ; *American R. Co. v. Didricksen,*
227 U. S. 145 (33 Sup. Ct. 224, 57 L. Ed. ——) ; *Gulf, C. & S.
F. R. Co. v. McGinnis,* 228 U. S. 173 (33 Sup. Ct. 426, 57
L. Ed. ——). These cases support our construction of the
act in question.

II.   The defendant challenges the jurisdiction of the

District Court and of this court because the cause of action sued on is founded upon a federal statute. We had occasion

8. SAME: juris-diction.

to consider the question here presented in *Bradbury v. C., R. I. & P. Ry. Co.*, 149 Iowa, 51. The defendant challenges the correctness of our holding in that case, and asks that the case be overruled. In that case we held that the implications of the congressional act in question permitted a concurrent jurisdiction to the state courts for its enforcement within their respective states. Since that time (April 5, 1910) Congress has enacted an amendment to the original act whereby it has in express terms recognized such concurrent jurisdiction in the state courts. If anything more were needed to remove the question beyond the realm of debate, it has been furnished by the holding of the Supreme Court of the United States in *Mondou v. N. Y. & N. H. Ry. Co.*, 223 U. S. 1 (32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. [N. S.] 44).

III. It is strenuously urged by appellant that there was no evidence to sustain the charge of negligence. The evidence did show that the engine in question was old and out

9. RAILWAYS: negligence: evidence.

of repair; that its wheels were badly worn; the bushings and bearings were worn; and that the engine rattled and pounded while it worked. The immediate cause of the breaking of the side bar was not ascertained. There was evidence tending to show that some other part must have broken first. The general theory of negligence charged in the petition was that the worn and dilapidated condition of the engine was such as to produce an unusual strain upon the side bar, and this was the theory upon which the case was submitted to the jury. We think the evidence was such that the question of negligence was fairly one for the jury.

IV. Some complaint is directed toward the instructions. It is said that the instructions assumed that there was evi-

dence to the effect that the engine wheels were "flattened," and that under the instruction the jury was permitted to find such fact. It is urged that there was no evidence to support such assumption. The petition did charge that the wheels were flat. The trial court followed somewhat the allegation of the petition in stating the details of negligence contended for, and this particular alleged condition was referred to in the instruction. The evidence did show that the wheel and rims were "badly worn," and that they had not been trimmed for more than a year and a half. There is no explanation in the record as to what is meant by a "flat" wheel. It appears to be conceded that it is a form of wear upon the rim or tire of the wheel. The term is doubtless capable of a more exact definition, and this form of wear may have its own peculiar characteristics, but it does not so appear from the record before us.

10. SAME: evidence instructions.

Lack of inspection was included in the enumeration of the trial court of certain specifications of negligence. It is urged that there was no evidence of lack of inspection, and that on the contrary the affirmative evidence of inspection was undisputed. There was no direct evidence of a lack of inspection. There was direct evidence of an inspection of the engine on the day of the accident. Whether the inspection was adequate was a question which inhered deeply in the actual condition of the engine as described by the various witnesses. Theoretically there is a distinction between a failure to inspect and a failure to repair after inspection and discovery. But such distinction is frequently not capable of practical application. If this engine was in the dilapidated condition described by the witnesses for the plaintiff, then the duty of adequate inspection, discovery, and repair would be practically identical. We think, therefore, that there was no prejudicial error in the instructions at this point.

11. SAME: negligence: statement of issues.

Other minor errors are specified, but they are of a

nature not likely to arise again, and we pass them without further consideration. For the reason indicated in the first division hereof, the judgment below must be reversed, and the case remanded for a new trial.—*Reversed* and *Remanded.*

WEAVER, J., taking no part.