MINNIE C. PEARL, Administratrix, v. THE OMAHA & ST. LOUIS RAILROAD COMPANY, Appellant.

| 115 | 535 |
| f125 | 406 |
| 115 | 535 |
| 132 | 63 |
| 115 | 535 |
| 135 | 196 |
| 115 | 535 |
| 139 | 330 |

Negligence: PLEA AND PROOF. Where in an action against a railroad company for negligence resulting in the death of a brakeman, the particular negligence charged was the failure of the conductor of the freight train to set the brakes and stop the detached portion of the train, which ran forward, causing the accident, evidence that it was customary for conductors of such trains to set the brakes on the caboose and stop the detached portion of their trains under such circumstances, was proper.

NEGLIGENCE OF FELLOW SERVANT: *Is not a risk assumed.* Where, in an action against a railroad company, the negligence charged is that of the conductor in failing to stop the detached portion of his train while a car was being set out, whereby a brakeman was killed, there is no error in a failure to instruct the jury as to assumption of risk, since, under the Iowa statutes, a railroad employee never assumes the risk of unanticipated negligence of a co-employee.

ADMISSIBILITY OF RULES. In an action against a railroad company for negligence of a conductor, whereby a brakeman was killed, it was not error to receive in evidence a rule of defendant requiring conductors to take every precaution for the protection of their trains.

*Construction of rule.* In an action against a railroad company for negligence resulting in the death of a brakeman while switching, a rule of the company that the rear brakeman should never allow the train to leave the station until certain that the conductor is on the train does not apply to movements of the train while setting out a car.

**Evidence:** ADMISSION OF LIFE TABLES: *Error without prejudice.* The admission of life expectancy tables, commencing at 30 years of age, in an action for negligently causing the death of a person 27 years old, did not prejudice the defendant as the period of expectancy shortens with the increase of years.

SAME: Life expectancy tables, in order to be admissible in an action for negligently causing death, need not show the expectancy at the precise age of decedent, but it is sufficient if they show the expectancy of persons approximately at that age.

PRELIMINARY PROOF: *Admissibility of Carlisle tables.* The Carlisle tables of life expectancy, as contained in the Encyclopedia Brittanica, are properly admitted in an action to recover for negligently causing death, without preliminary proof.

SAME: *American Experience tables of expectancy.* The American Experience tables of life expectancy, contained in a life insurance manual, and shown to be in general use by insurance men throughout the state, and accepted as authority, are properly admitted in an action for negligently causing death, though the witness giving the preliminary testimony had no knowledge of the way the tables were in fact made up, or of the class of persons included in the estimate.

COMPETENCY: *Earnings and expenses of decedent.* In an action by a surviving wife against a railroad company for the negligent killing of her husband, her testimony as to his earnings and expenses is competent.

CROSS-EXAMINATION. An engine, north bound, with a number of cars attached stopped north of a depot, so as to bring the caboose several car lengths to the south of a water tank. The crew, except the fireman, entered the depot, and, on the arrival of a south bound train, decedent was told by the conductor that they were ready as soon as a car was set out. Thereupon the engineer returned to his place, the head brakeman told him to pull down and set out the car, and when the train had moved some distance, decedent signalled it to stop. He was hurt while the setting out was in progress. The conductor testified, in chief, to these occurences, seeing the rear lights of the caboose pass while he was in the depot and to walking down to the train. *Held,* it was improper cross-examination to ask him whether all that had taken place was in accordance with the customary duties and "whether it was not under such circumstances, the duty of the rear brakeman to see to the setting of the brakes on his end of the train, when necessary for shunting of this car that was to be set out."

HYPOTHETICAL ANSWERS: *Exclusion.* Where in an action against a railroad company for neglect of a freight conductor to set

the caboose brakes and stop the detached portion of his train while a car was being set out, whereby a brakeman was killed, a witness has testified to the customary way of setting cars out of a train under such circumstances, his remark, to a hypothetical question, that it described a condition that is unusual, that he did not remember any like that given, and that he had never been employed on this particular conductor's train, is not ground for excluding his testimony, but goes only to its weight.

IMPEACHMENT:   *Contradiction.*   In an action against a railroad company for the death of an employee, plaintiff's witness claimed on cross-examination that he had been discharged from defendant's employ because he left a switch unlocked. In a deposition taken at plaintiff's instance, in answer to a question whether he left the switch open, he said that he claimed to have left the switch unlocked and not open. On the trial he insisted that his answer in the deposition was merely, "No, sir." *Held*, that the deposition was properly excluded as impeaching evidence, because the witness' insistence at the trial did not materially differ from the answer in the deposition.

*Same.*   The deposition was also properly excluded because it was an attempt to impeach on an immaterial matter.

OFFER OF TESTIMONY:   *Expectancy tables.*   An objection to the admission of the expectancy tables offered in an action to recover for the death of a railroad employee, that the language of their offer was "to show the expectancy of the life of the deceased," rather than "as tending to show," is too technical to be sustained.

OPINIONS:   *Industry of decedent.*   In an action by a surviving wife against a railroad company for the negligent killing of her husband, her testimony that he was industrious is competent testimony as to a fact, and not the expression of an opinion.

Appeal:   PRESUMPTIONS:   Where the contents of documents offered in evidence are not set out in the abstract, the ruling of the court excluding them will be presumed correct.

*Appeal from Page District Court.*—HON. A. B. THORNELL, Judge.

MONDAY, FEBRUARY 3, 1902.

THE defendant appeals from a judgment for damages occasioned by the alleged negligent killing of F. E. Pearl.— *Affirmed.*

*J. G. Trimble* and *G. B. Jennings* for appellant.

*Dale & Bissell, Clark & Son* and *William Connor* for appellee.

LADD, C. J.—The deceased was in the employment of defendant as rear brakeman, and the train on which he made his last trip reached Blanchard after 12 o'clock at night, on its way from Stanberry, Mo., to Council Bluffs, Iowa. The engine, to which were attached 12 or 13 freight cars, stopped north of the depot, on the main track, at the water tank, so that the caboose stood several car lengths to the south of it. The crew, except the fireman, entered the depot; and, upon the arrival of a southbound train on the east side track, Pearl said to the conductor, "Are we ready?" to which the latter responded, "Yes; as soon as we set this car out, we will go." Thereupon the engineer returned to his place, the head brakeman proceeded to tell him to pull down and set the car of lumber out, and, when the train had moved some distance, Pearl signalled it to stop, whereupon he cut off the six or seven cars, with the caboose, behind the car of lumber to be left. The engine, with the attached cars, moved beyond the switch, which the head brakeman set for the house track, next to the main track and, after Pearl uncoupled the last car, backed and kicked it to the south on the house track. Both brakemen had been working on the left or west side of the train; and Pearl, whose duty it was to ride the car of lumber in and set the brake, attempted to pass over the house track at the north end (between it and the engine), in order to ascend the ladder on the other side, when the cars connected with the caboose, first detached, on which the brakes had not been set, ran against the kicked car, and moved it so suddenly toward the engine that it knocked Pearl down and passed over him; and, as the wheels of the front car on the main track dropped from the ends of the rails, the switch

still being set for the house track, he was crushed and died within an hour. The particular act of negligence alleged is that the conductor failed to set the brakes on the caboose, so as to prevent the detached cars from moving toward the switch, as is alleged to have been his duty. Evidence introduced tended to show that in setting out a car, under the circumstances mentioned, it was usual and customary for the conductors on all trains on defendant's line to set the brake on the caboose, and thereby bring the detached portion of the train to a standstill, immediately upon being disconnected. Appellant insists such evidence was inadmissible, for that it appeared the work was done as usual. This is true with respect to all save the conductor. Whether he ordinarily pursued a different method was not shown, and evidence of the customary way of doing the work was admissable, as bearing on two questions: (1) Was it the conductor's duty to have set the brakes on the caboose? And (2) Had the deceased a right to rely on his doing so?

II. One Hussey testified to the customary way of setting cars out of a train, in the circumstances mentioned. He remarked that the hypothetical question described a "condition that is not very often seen"; that he did not remember any like that given, and had never been employed on this particular conductor's train. Appellant urges that, because of these answers, his testimony should have been excluded. Precisely to what he referred is not disclosed, unless it was the situation of the crew and what was said. In any event, these responses did not warrant the rejection of his evidence, but might well be considered in determining the weight to be given to it.

III. Callicott, who had testified to the usual manner of setting cars out, disclosed on cross-examination that he had been discharged from employment as brakeman by defendant, as he claimed, for leaving a switch unlocked. It ap-

peared in a deposition taken at plaintiff's instance that he had said in answer to the question whether he had left it open: "I claim I left it unlocked. I didn't leave it open. I claim I left it unlocked." On the trial he denied so testifying, and insisted his answers were merely, "No, sir." Appellant complains of the exclusion of this portion of the deposition. The ruling was right, (1) because the answer at the trial does not materially differ from that in the deposition; and (2) it was an attempt to impeach on an immaterial matter.

IV. Exception was taken to receiving the following rule in evidence: "Conductors and enginemen will be held equally responsible for the violation of any of the rules governing the safety of their trains, and they must take every precaution for the protection of their trains." It bore directly on the duty of the conductor to perform the work customarily exacted from him in the protection of his train, and was rightly admitted.

V. The conductor, who had testified to being at the station agent's window to deliver the bill of the car of lumber to be set out, to the occurrences there as heretofore related, to seeing the rear lights of the caboose pass while there and to walking down to the train, was asked by defendant upon cross-examination whether all that had taken place was in accordance with the customary duties, and also "whether it was not, under such circumstances, the duty of the rear brakeman to see to the setting of the brakes on his end of the train, when necessary for shunting of this car that was to be set out." The mere stating of these questions is enough to show that the objection as not cross-examination was properly sustained. The custom usually followed had not been mentioned. Also certain reports made by the trainmen to the superintendent were offered. Their contents are not set out in the abstract, and the ruling of the court excluding them will be presumed correct.

VI.    Minnie Pearl, widow of the deceased, was permitted to testify, over defendant's objection, that her husband was industrious, that he was earning from $65 to $85 a month, and that his actual expenses for himself and family were from $175 to $200 per year.    The objection that in saying that he was industrious she merely expressed an opinion was properly overruled.    The habit of industry is a fact to be established by any one having knowledge.    The propriety of receiving evidence of what he was earning and expending shortly before his death is vindicated, and its purpose fully explained, in *Simonson v. Railroad Co.*, 49 Iowa, 87.

VII.    The deceased was killed October 17, 1897, and would have been 27 years old had he lived to November 8, 1897.    Life tables were introduced, indicating the expectancy of life of a person of that age.    These, it is urged in support of an objection interposed, could not be received as fixing the expectancy of life of deceased.    We know of no such claim ever being made.    The tables are supposed to give the average expectancy as ascertained from a large number of cases, and are received for consideration in connection with other circumstances, such as condition of health, hazard of occupation, and the like, in approximately estimating how long deceased would, in all reasonable probability, have lived, but for the loss of life in the transaction under investigation.

The objection, as we understand it, is directed to the wording of the offer, which was "to show the expectancy of life of deceased," rather than "as tending to show."    This is a distinction not likely to have been observed by the jury, and too technical for ordinary use in ruling on the admissability of evidence.    The Carlisle tables as contained in the Enclopædia Britannica were admissible without preliminary proof.    *Scagee v. Railway Co.*, 83 Iowa, 380; *Haden v. Railway Co.*, 99 Iowa, 737.    A life insurance manual, containing the American Experience tables, by A. J. Flitcraft, was re-

ceived.    The evidence showed the tables as contained therein to be in general use by insurance men throughout the state, and accepted as authority.    This was enough, though the witness had no knowledge of the way these were in fact "made up," or the class of persons included in the estimate.    If generally accepted as standard authority, the book was properly received.    *Gorman v. Railway Co.,* 78 Iowa 513; *Kreuger v. Sylvester,* 100 Iowa, 647.    The Carlisle tables indicated the expectancy of a person 30 years old, but not of 27; and of this complaint is made.    But it is a matter of both common and scientific knowledge that after maturity the time of expectancy shortens with the increase of years.    Hence the defendant could have suffered no prejudice.    In any event, the tables, to be admissible, need not show the precise age, but approximately that of the person involved.    As defendant did not ask an instruction limiting the force and effect to be given these tables, it is not in a situation to complain of the court's omission to so instruct.

VIII.    Appellant seems to rely somewhat on rule 421, introduced in evidence:  "Rear brakeman should never give signals to go, or allow the train to leave the station until certain that the conductor is with the train."  This evidently refers to pulling out of the station, and has no application to switching in the yards.

IX.    Complaint is made of the court's omission to give an instruction on the assumption of risks.    There was no occasion for doing so. An employee never, under our statute, assumes the risk of the future, unanticipated negligence of his co-employee of a railroad. The jury may well have found what the conductor said at the station was intended as a direction to the brakeman to set out the car of lumber, especially as it was so treated in his presence; that in doing such work it was a part of the conductor's duties, by setting the brakes on the caboose, to stop it it and other cars, after being detached from the one being set

out; that deceased, because of the method usually and customarily followed, relied, and had the right to rely, on the conductor to stop said cars at the proper time; that, because of the conductor's omission of this duty, the detached cars struck the car kicked in near the switch, and thereby caused Pearl's death. If so, the omission of duty by the conductor occasioned the loss of life to the deceased without fault on his part. The ruling on the motion to strike the amendment to the petition merits no attention. Even were it erroneous, which it was not, no prejudice could have resulted. The apellant's motion to tax the costs of appellee's denial and correction abstract to appellee is sustained. It was entirely unnecessary.—AFFIRMED.