WILLIAM L. RHODES, v. DES MOINES, IOWA FALLS & NORTHERN RAILWAY COMPANY, Appellant.

**Credibility of witnesses:** VERDICT UPON CONFLICTING EVIDENCE. The credibility of witnesses and weight to be given their testimony is for the jury; and where there is a sharp conflict in the testimony regarding the cause of an injury the verdict will not be disturbed.

**Same:** CONTRIBUTORY NEGLIGENCE. Where there is evidence tending to show that a brakeman was acting with due care at the time of his injury, contributory negligence as a matter of law cannot be predicated on the manner in which he was performing the work.

**Negligence:** ASSUMPTION OF RISK. Assumption of risk is not a defense to an action for the negligence of a coemployé.

**Damages:** INSTRUCTION. An instruction that plaintiff, a brakeman, if entitled to recover at all was entitled to compensation for mental and physical pain, for the loss of his arm and decreased earning capacity, is held not misleading as authorizing double damages.

*Appeal from Polk District Court.—* HON. HUGH BRENNAN, Judge.

THURSDAY, MARCH 19, 1908.

REHEARING DENIED, TUESDAY, SEPTEMBER 29, 1908.

SUIT to recover damages for a personal injury.  Trial to a jury, and verdict and judgment for plaintiff.  The defendant appeals.— *Affirmed.*

*J. H. Funk* and *Thomas A. Cheshire,* for appellant.

*Halloran & Starkey, A. H. McVey,* and *E. H. McVey,* for appellee.

SHERWIN, J.— At the time of his injury, the plaintiff was a freight brakeman on the defendant's road.  On the morning in question, January 8, 1905, he left Des Moines at about two o'clock on a freight train bound for Iowa Falls. The train reached Cambridge a little before five o'clock and while it was yet dark, and the plaintiff was called upon to do some switching on the passing track, and while attempting to make a coupling between the front end of the engine and a car, one of his arms was caught and crushed.  The petition alleged negligence in not having the engine equipped with an automatic coupler, and negligence on the part of the engineer in going forward without a signal so to do from the plaintiff.  The plaintiff testified that, when the engine first struck the car in question, it failed to make the coupling and started the car away from it; that the engine followed the car and hit it again, but did not then make the coupling; that after the second attempt the cars moved away six or eight inches, and that he then signaled the fireman to stop the engine, which was done.  That he then went in between the car and the engine, and that, while he was trying to open the knuckle on the car, the engine moved ahead and caught his arm.  The engineer and the fireman testified that the

coupling was made at the second attempt, and that the engine was not stopped before it was made. The fireman testified that the plaintiff did not signal him to stop the engine at any time while they were making the coupling. The plaintiff's arm was amputated by Dr. H. P. Hanson, the defendant's local surgeon, and a few days thereafter the doctor prepared a written report of the accident for the company. This report was signed by the plaintiff, and contained the following statements: " In making coupling between engine and car, I was pushing on the drawbar, and in so doing I slipped and my arm got in between the drawbar. I do not blame anybody, and hereby release the company as the cause of my injury." In answer to a request for " other statements as to the cause of the injury," the answer was written: " Simply missing my foothold in trying to push the drawbar over so that it would lock properly." The plaintiff was the only one who testified as to how the accident occurred. In addition to the testimony of the engineer and fireman to which we have already referred, and in addition to the written report signed by the plaintiff, the defendant produced testimony tending to show inconsistent statements as to the cause of the injury, some of which were said to have been made immediately thereafter. The plaintiff admitted having signed the written report at the request of Dr. Hanson, but testified that he did not read it, and did not know that it contained the statements relied upon by appellant. He denied having made the other statements testified to by some of the defendant's witnesses.

The credibility of the several witnesses and the weight to be given to their testimony were questions exclusively for the jury. We have read the entire record with care, and while there is sharp conflict in the testimony relating to the cause of the injury which the plaintiff received, it cannot be said as a matter of law that the verdict is not sufficiently supported by the evidence.

1. CREDIBILITY OF WITNESSES: verdict upon conflicting evidence.

Neither does the record show contributory negligence as a matter of law. If the plaintiff's testimony is true, he was acting with due care at the time. Contributory negligence,

2. Same: contributory negligence. as a matter of law, cannot be predicated on the manner in which the work was done. *Nichols v. Railway Co.,* 69 Iowa, 154; *Bucklew v. Railway Co.,* 64 Iowa, 603; *Beems v. Railway Company,* 58 Iowa, 150.

Nor is there merit in the appellant's claim that the plaintiff assumed the risk of placing his arm between the ends of the couplers. There was no such issue in the case.

3. Negligence: assumption of risk. The negligence charged was that of a fellow servant, and the doctrine of the assumption of risk cannot avail the appellant. *Phinney v. Railway Co.,* 122 Iowa, 488; *Pearl v. Railway Co.,* 115 Iowa, 538; Code, section 2071.

The appellant complains of the refusal of the court to give to the jury instructions asked by it. A great many were asked, and about as many complaints are now made; but it is impossible and unnecessary to consider each one separately. In so far as such requests announced correct principles of law which were applicable to the issue involved, the points were sufficiently covered by the court's instructions. Criticism is made of a large number of the instructions given by the court, but with one exception, which we shall presently discuss, we think there is no substantial basis for such criticism. The charge as a whole was fair and full and could not have been misunderstood by the jury.

In the twenty-second instruction the jury was told that, if it found the plaintiff entitled to recover at all, he was entitled to compensation for physical and mental pain and

4. Damages: instruction. suffering, compensation for the loss of his arm, and compensation for decreased earning capacity in the future. It is said that a verdict which would fairly compensate the plaintiff for the loss of his arm must necessarily include mental and physical pain and

suffering and loss of earning capacity. It is undoubtedly true as an abstract proposition that the loss of an arm would include the other two elements of damage, and in fact, broadly speaking, it would include all damage whatsoever. The question here presented, however, is whether the jury was misled by the instruction, and awarded double damages because of the reference to the other elements, or because of the direction to compensate the plaintiff for the loss of his arm in connection with the other elements named. The jury would surely understand that it was to compensate for pain and suffering and for loss of earning capacity, because it was specifically so instructed. It would also understand from common observation and knowledge that the loss of an arm may occasion great personal inconvenience and damage, not included in the loss of earning capacity. Moreover, all jurors understand that double compensation is not allowed in these cases, and we think the assumption that they acted differently in this case would be unwarranted by anything in the record before us. We conclude, therefore, that the instruction was not prejudicial. We find no error for which there should be a reversal, and the judgment is therefore affirmed.