Cunningham, Judge.
Appellee Bradley, as plaintiff below, brought his action in the district court for damages against the city in *178 the sum of $10,000.00. The ease is one of a series that have been brought from time to time by property owners against the city of Pueblo, growing out of the construction by that city of a viaduct spanning the valley portion of the town, and- connecting the more elevated sections lying on either side thereof. The jury returned a verdict for $7,500.00, on which judgment was entered.
The plaintiff owned two adjoining lots fronting on that section of Main Street along which the city constructed a viaduct more than 'seven hundred feet in length, eighty feet in width, and twenty-two feet above the natural surface of the street. This viaduct rests on steel piers, and covers the entire width of the street. Plaintiff’s building was built flush with the front of the street; hence the viaduct came in contact with, and was about the same height as, the building.
1. The evidence, as is usual in such cases, was on the question of the damage which the construction of the viaduct, had occasioned the plaintiff, extremely conflicting, ranging all the way from a substantial benefit to the plaintiff’s property to the entire destruction of-its value. There is evidence sufficient to sustain the verdict and support the judgment entered thereon in favor of plaintiff, hence the decree of the trial court may not be disturbed, providing the plaintiff was entitled, under the law, to recover any damage, and there were no reversible errors occurring in the procedure incident to the trial.
2. Complaint is made by appellant concerning certain rulings of the trial court in the matter of excluding testimony offered by the city, particularly that of witness W. J. Whitlock. The following question was propounded to this witness:
“Q. Assuming that this building was first constructed as a frame building in 1879, and reconstructed in 1889 in the form the building now is,, what would you *179 say, considering the age of the building, that the building as it stood shortly prior to the construction of the South Main Street viaduct in the spring of 1905 was worth?”
The building referred to in the above question belonged to appellee, and was situated on one of his two lots hereinabove mentioned. Conceding, but not deciding, the question a proper one, if we were to reverse this case, and on another trial this witness were recalled, there is nothing whatever in the record to indicate what his answer to "the question would be. Piad the court not sustained the objection interposed to this question, the witness might have answered that he did not know what the building was worth at the time inquired about, or he might have fixed the value of the building at a figure that would have been decidedly advantageous to the plaintiff, rather than to the city, on whose behalf he was called. In his work on Trials, Judge Seymour D. Thompson says:
£iIn order to put the trial court in the wrong on appeal or writ of error for refusing an offer of evidence on direct examination, the offer as stated in the bill of exceptions must show the materiality of the evidence, which was tendered. Where the question does not suggest the answer, counsel must, in general, disclose what it will be, or what he expects it to be, or what he proposes to prove. "Where there is in the bill of exceptions no written or formal offer of the evidence or statement of what the witness will testify to, there is no available error.” 1 Thompson on Trials, sec. 678.
The Iowa supreme court, in Porter v. Moles, 131 N. W., 23, thus states the rule:
££ Prejudicial error cannot be predicated on this ruling of the court for the reason that it does not appear by statement of counsel, or otherwise, what the testimony of the witness would have been in response to the question. * * * It is well settled that before a case will be re *180 versed on the ground of the exclusion of evidence, it must appear in some way that the evidence, if it had been admitted, would have tended to support the contention of the party for whom it was offered.”
Many Iowa cases to the same effect are cited in the opinion in Porter v. Moles, supra. Ordinarily, we think, the rule laid down by Judge Thompson, and followed by the Iowa court, should be adopted by courts of review, and in the instant case we shall be guided by it. .
3. The instructions of the trial court on the measure of damages appear to be in harmony with the rule laid down in City v. Bonesteel, 30 Colo., 107, and therefore require no further consideration. -
4. It appears by proof offered on behalf of the city that it had in 1892, by ordinance, established a grade of something like sixteen feet above the natural surface, on that portion of Main' Street over which the viaduct in question was constructed, but that no attempt had ever been made by the city to bring the street to this grade, or to raise it above the natural surface at all, until the viaduct was constructed in 1906-7. It is vigorously contended by counsel for the city that at most plaintiff’s damages, if any he sustained, must be limited to the raising of the viaduct above the grade established by ordinance in 1892. The facts involved in this case are strikingly similar to those present in the case of Pueblo v. Strait, 20 Colo., 13, and the opinion in the Strait case, in our view, must control in this. In concluding that the Strait case must govern this case, we are not unmindful of the statement of counsel for the city that an examination of the record in the Strait case will show that the city had not, prior to the building of the viaduct, established any grade whatever, as the record in this case shows the city had done. But in the Strait case, Chief Justice Hayt, *181 who wrote the opinion, at page 17, thus states the issues upon which he was passing:
“The question presented by this record may be stated as follows: Is a municipal corporation liable in damages for an injury to abutting property occasioned by the building of a viaduct in a public street over railroad tracks ? ”
After a careftd analysis of the authorities in this state and elsewhere, Chief Justice Hayt reached the conclusion that the question propounded by him, which we have just quoted, ought to be answered in the affirmative, and this, apparently, without reference to whether the city had or had not, prior to the construction of the viaduct, by ordinance established a grade. Moreover, as we have already observed, the record in this case discloses that the city had permitted the surface or natural grade of the street to remain unaltered for some fifteen years after it had established by ordinance a paper grade. Furthermore, the building in question was constructed long prior to the passage by the city of the ordinance of 1892. These are features which we have considered in reaching our conclusion that the judgment of the trial court should be affirmed.
Much reliance is placed by counsel for appellant upon the case of Leiper v. Denver, 36 Colo., 110. It is apparent that our supreme court had under consideration the Strait case at the time of the preparation of the opinion in the Leiper case, since reference is made to it, and we discover nothing in the opinion in the Leiper case which indicates any purpose or intention of our supreme court to modify the doctrine laid down in the Strait case.
In section 15, article 2 of the constitution of our state, it is provided that: “Private property shall not be taken or damaged for public or private use without just compensation.”
*182 In Garnet Co. v. Sampson, 48 Colo., 285, the supreme court had before it for interpretation a section of onr statute pertaining to reservoirs and the liability of owners thereof for damage arising from leakage. Beferring to the duty of courts in the matter of the construction of statutes, Chief Justice Steele, speaking for the majority of the court in .that case, at page 287, says:
“The statute places an absolute liability upon the owners of reservoirs for all damages arising from leakage or overflow of the water, or by floods caused by the breaking of the embankment. No exception is mentioned, and unless an exception appears in the statute, we must presume that none was intended, and it ivould be a gross abuse of the judicial power to construe away the words of the statute by holding the owners of the reservoirs exempt from liability for damage upon their proof of the exercise of reasonable care and caution.”
The italics are purs. It will hardly be contended that courts owe greater respect to statutes than to constitutions. In the quotation, supra, from article 2, section 15, no exception appears exempting a city from making just compensation for property by it damaged for the benefit of the public.' From the fact that a dissenting opinion was written in the Garnet case, in which the attention of the court was directly called to the opinion in the Leiper case, it may be assumed that the language of Chief Justice Steele,, which we have quoted above from the opinion in the Garnet case, was the result of deliberation, and that the same expressed the mature conviction of our supreme court at that time, and was intended as a modification of the doctrine laid down in Leiper v. Denver, and the earlier authorities of that court referred to in the Leiper case.
For a further consideration of the subject discussed in the Leiper case, we call attention to the note to that *183 case appearing in 7 L. R. A. (N. S.), 108. Also to the cases of Kimball v. Salt Lake City, 10 L. R. A. (N. S.), 483; Brown v. City of Seattle (Wash.), 31 Pac., 313. In the latter case it is said:
“If private property is damaged for pnblic benefit, the public should make good the loss to the individual. Such always was the equity of the case, and the constitution makes the hitherto disregarded equity now the law of it.”
Chief Justice Hayt quotes with approval the above excerpt from Brown v. Seattle, supra, hence this unqualified rule of damages has received the sanction of our supreme court. We quote further .from page 21 of the Strait case, as follows:
“The law is certainly more reasonable and just which requires compensation to be made by the municipality out of the common fund for an injury occasioned by an improvement for the public convenience than to cause thé individual to suffer the entire loss.”
It will be observed that Chief Justice Hayt, in using the language last above quoted, makes no qualification whatever or distinction between first grades established by the city and changes in grades, nor does our constitution attempt any such distinction. If we were to so distinguish, we would, to quote the language of Chief Justice .-Steele in the Garnet case, become guilty of “ a gross abuse of the judicial power.”
The judgment of the trial court is affirmed..