Cunningham, Presiding Judge.
Appellee, plaintiff below, brought her action against the Fuel Company to recover damages occasioned by the death of her husband, Mike Maccia, an employe of the Company, and had judgment for $3,500. The defendant company was operating a coal mine in Boulder County, in which Maccia was working as a common miner. The mine was operated through a main tunnel or haulway, running north and south, entries being driven easterly and westerly at right angles from this haulway into the coal body. The coal extracted from the entries was transported from the entries in cars down the haulway to a shaft, and thence by cage to the surface.- While walking northward from the shaft in the hanlway, Maccia was run upon by a trip or train of cars, loaded with coal, which was proceeding southward to the shaft, and received injuries, from which he shortly died. There were six cars in the trip, and attached to the cars was a mule, the mule and cars being in charge of one Benton, a driver. The track on which the cars of coal were being hauled was laid on a grade sloping to the south, or towards the shaft, at least for tlie greater portion of the distance. The driver, Benton, testified that the cars, at the parting or switch where they were placed by other haulers who brought them from the entries, and where he picked them up for the purpose of hauling them to the shaft, were held stationary at that point by means of a sprag or iron bar run through the spokes, of the wheel. .When it was desired to start the cars down the grade to the shaft, it was Benton’s custom to remove this sprag, when the cars would start, by the force of gravity, south upon the track, running upon the mule, which in turn would start off, in order to keep out of the way of the *443 car, and within ten or twelve feet, such was the character of the grade, the mule was obliged to go on, to use Benton’s language, “a good trot.” There were no brakes of any sort used to check or regulate the speed of the cars, once the sprag was withdrawn, nor was there any provision made for the control of the mule. No signals of any sort were used in the mine, upon the mule, or about the train of cars, to indicate when the cars were to be started, or that they were in motion. The cars ran upon no certain schedule. The only light in the tunnel or haulway, so far as the evidence discloses, was one electric bulb stationed somewhat back of the parting or switch (that is to say, north of the trip of cars as they stood on the switch before being'started for the shaft) except the lights or lamps on the caps of the miners, and. on the cap of Benton, the driver. The haulway was of irregular width, and so narrow at certain points on either side of the track as to make it dangerous, if not impossible, at such points, for a man to stand between the walls of the tunnel and the cars as they passed. At the point where Maccia was caught between the cars and the wall, and on the side where he was caught, the evidence shows that the cars, or the coal projecting from them, rubbed the wall of the tunnel. There were some two hundred men employed in and about the mine, all of whom used the haulway at all times of the day for the purpose of passing from the shaft to the various entries on either side of the haulway. There was some evidence that there was an air passage some fifty feet hack from the haul-way, through which the employes might have walked in going to and from their work in the various entries, but there is no evidence that any of the employes ever used this air passage, and the evidence shows conclusively that the haulway was used with the full knowledge and consent of those in charge of the operation of the mine, by all of its employes, as already stated.
*444 The complaint was in two counts, one charging the master with negligence, and the other, the second count, being under the fellow servant act, section 2065, E. S., and charging Benton, the driver of the trip, with negligence.
1. The evidence shows conclusively that immediately before pulling the sprag from the cars and starting the trip down grade on its way to the shaft, Benton was talking with another driver on the parting, who was in the act of starting with another trip of cars into an entry; that Benton kept his back towards the shaft while thus talking, and while pulling the sprag, and maintained this position after the cars had started, for he testified that he climbed upon the cars as they started, and rode backwards, with his back to the shaft and towards Maccia, who was walking up the grade from the shaft, until the very instant of the collision. The evidence further shows that for considerably more than one. hundred feet immediately preceding the collision, Maccia had been walking up the grade, on a straight track, and would have been, by reason of the light in his cap, in plain view of Benton had the latter been paying any attention whatever to conditions down the track in front of the mule. Owing to Benton’s position on the car, and owing to the lack of brakes and signals, his conduct constituted negligence quite as gross as though he had blown out his lamp before starting* the cars, and had started the mule and cars down the grade unaccompanied by anyone. Under such circumstances, it is idle to contend that there was not abundant evidence to warrant the jury in finding Benton guilty of negligence, no matter what their findings may have been as to the negligence of the mining company in not properly equipping its mine with safety devices.
2. It is contended by defendant that Maccia assumed the risk, not only of the failure of the mining *445 company to adopt proper safety devices, but also of the negligence of his fellow servant, Benton. We shall not discuss the doctrine of assumed risk as applied to the first count of the complaint charging negligence against the master, but shall limit our consideration of this question as applied to the second count of the complaint, which is based upon the fellow servant statute, section 2065, R. S. In Pearl v. Omaha & St. L. Ry. Co., 115 Ia., 535, 88 N. W., 1078, it is said:
“Complaint is made of the court’s omission to give an instruction on the assumption of risks. There was no occasion for doing so. An employe never, under our statute, assumes the risk of the future, unanticipated negligence of his .co-employes of a railroad.”
And, in Hackett v. Wisconsin Ry. Co., 141 Wis., 464, 124 N. W., 1018, 45 L. R. A. (N. S.), 664, it is said:
“Under the existing statutes in this state, a railroad employe, in the line of his duty, does not assume the risk of negligence of his co-employe, excepting, perhaps, in the case where he knowingly, voluntarily, and unnecessarily submits himself thereto.”
Other authorities have stated the rule even more strongly against the contention here made in behalf of appellant. See Rhodes v. Des Moines Ry. Co., 139 Ia., 327, 115 N. W., 503; Phinney v. I. C. Ry. Co., 122 Ia., 488, 98 N. W., 356. Under none of the authorities above ' cited can it be ruled, on the circumstances of this case, that Maccia assumed, as a matter of law, the risk of the negligence of the driver, Benton.
3. The trial court instructed the jury that the burden of proving contributory negligence was placed upon the defendant company. Counsel for defendant predicates error on this instruction, and upon the theory that since one of the counts in the complaint was based upon the fellow servant statute, and since said statute gives a remedy denied by the common law, that he who would *446 invoke the aid of the statute must plead and prove that he, the plaintiff (or, in this case, the deceased plaintiff’s husband), was in the exercise of due care. In other words, that while this instruction of the court-was correct as applied to the first count, it was wrong as to the second count, which was based upon the statute, and the court made no limitation as to the application of the instruction. There appears to be authority supporting counsel’s contention, but the same is contrary to the rule laid down in Lorimer v. Ry. Co., 48 Minn., 391, 51 N. W., 125; Dugan v. Chicago Ry. Co., 85 Wis., 609, 55 N. W., 894, and Andrews v. Chicago Ry. Co., 96 Wis., 348, 71 N. W., 372. Under statutes similar to our own, the Minnesota and Wisconsin courts have, held that it was not within the purpose of the fellow servant act to change the rule as to the burden of proving contributory negligence, and these courts maintain that the phrase, “without contributory negligence on his part,” appearing in their acts, which is similar to the phrase, “being in the exercise of due care,” appearing in our act,, was obviously inserted in the statute from motives of caution, •that it might not be supposed that the declared liability of the master was intended to be absolute, and without regard to any negligence of the complaint contributing to the injury. The Wisconsin and Minnesota rule meets with our approval.
4. The haulway or tunnel, which has heretofore beén described, was separated into compartments by a door, which was in charge of a boy some fourteen years of age, whose sole duty, so far as the evidence discloses, was to open and close this door in order to permit footmen and the coal hauler to pass from one compartment to another. The lad in charge of this door is denominated a “trapper boy.”. He testified on the trial that on the day of the accident, when he let Maccia pass through the door on his way from the shaft northward *447 towards the switch or parting where the coal cars were evidently then standing, “I told him to wait there, for Ernie would be out with a trip, and he said he was in a hurry.” By Ernie is meant Ernest Benton, the driver of the trip. Counsel for appellant appear to place great reliance upon this testimony, and insist that it shows conclusively, as a matter of law, that Maccia was guilty of contributory negligence in not heeding the suggestion of the trapper boy and remaining at the trap door until Benton had passed by with the trip of cars. We are unable to perceive how it can be urged that Maccia was guilty of contributory negligence in not adopting the suggestion of the trapper boy and remaining at the trap door, without conceding that the tunnel beyond the trap door to the north was inherently dangerous, as it was then being operated. Moreover, it will be observed that the trapper boy did not, according to his own testimony, profess to have any knowledge as to when the driver would be out, or how long Maccia would, have to wait for his coming. Indeed, it appears from the record that the trapper ,boy could have had no knowledge on this subject, since the cars ran at irregular periods, and Benton testified that the time he would have to wait on the switch for his load varied. There is nothing to show that the trapper boy was authorized by the company to act in the capacity of a train despatcher, or that he was accustomed to so act. Moreover, the jury were the sole judges of the credibility of the witnesses, and they may have concluded that the boy’s statement as to what he said to Maccia was unworthy of belief. Indeed, there was some evidence in the record tending to affect the credibility of McNulty, the trapper, and this leads us to the consideration of another contention urged by appellant.
5. On cross-examination of the boy, McNulty, coun- • sel for appellee, brought out the fact that the company *448 had permitted him, and his parents, to remain on its property after having ejected or expelled their other employes therefrom as the result of a labor difference ■which occurred subsequent to the accident resulting in Maccia’s death. This was doubtless done for the purpose of discrediting McNulty’s testimony, by showing bias and prejudice in favor of the company, or at least, motives for such bias. In order to break the force of this admission by McNulty, ‘ i. e., the admission that he and his parents had been thus favored, and, therefore, it might be inferred, he had been induced by motives of gratitude to testify falsely as to having warned Maccia, counsel for defendant asked O’Neill, the superintendent of the mine, this question:
“Q. I will ask you whether Martin McNulty made any statement to you after the occurrence of the accident to Mr. Maccia, with reference -to a conversation at the door near the point where he was employed as a trapper boy?”
Counsel for plaintiff made the following objection to this question:
“I object as incompetent and immaterial, and as an attempt to bolster up the evidence of the witness, as to which no evidence has been introduced to attack it.”
The record shows the objection was sustained, and the defendant excepted. Upon this ruling defendant predicates error, and urges here that it was manifestly prejudiced in not being permitted by the court to show that McNulty had made the same statement with reference to his warning to Maccia to Superintendent O’Neill, immediately after the accident and before any favors which might have influenced him had been extended to him or his parents. It will be observed that the question propounded to O’Neill does not at all indicate when McNulty made any statement to him, if it be assumed *449 he did make a statement, except that it was, “after the occurrence of the accident.” As the question does not fix the time of the supposed statement, it may well have called for a conversation between McNulty and O’Neill after, instead of before, the favors had been extended to himself and his parents. The record does not disclose that counsel for appellant attempted, at the time objection was made to the question, to 'enlighten the court as to what purpose or object they had in propounding it. They contented themselves with taking an adverse ruling and merely noting an exception to the same. Furthermore, under our ruling in City of Pueblo v. Bradley, 23 Colo. App., 177, 128 Pac., 888, the defendant is in no position to assign error on the ruling of the trial court. See authorities there cited.
We have by no means discussed all of the contentions urged on behálf of defendant, nor can we do so without unduly prolonging our opinion. We have contented ourselves with a discussion of those which we think are of sufficient seriousness to warrant reference. The instructions, as a whole (and the jury was warned by the trial court that the instructions must be considered together and as a whole), were fair to the defendant — some of them over liberal to it — and we observe no prejudicial error in the admission of the testimony. The'verdict of the jury precludes any • contention of passion or prejudice, or undue sympathy on its part, in view of the fact that it returned a verdict for but $3,500, whereas, the maximum under the statute permitted a verdict of $5,000. Indeed, when the age, the exemplary habits, the earning capacity and the industry of the deceased, as disclosed by the record, are considered, we are obliged to conclude that the jury acted with unusual moderation, and wfe are not disposed to disturb its verdict.
*450 Decided February 11, A. D. 1914.
Rehearing denied March 9, A. D. 1914.
Counsel for defendant say in their brief: “The court nor the jury can properly take judicial notice of how a coal mine ought to be operated, or as to what is practicable and good usage among prudent operators.” In a measure, of course, this is true, but only in a measure. Where the negligence is gross, as we believe the evidence in this case discloses it was, neither courts nor juries may properly shut their eyes, forswear their own judgment, and await the coming in of expert testimony concerning some physical fact, or omission of duty, patent to everyone.

Judgment Affirmed.